# NATIONWIDE MUTUAL INSURANCE CO. ET AL. *v.* DARDEN

No. 90–1802.   Argued January 21, 1992—Decided March 24, 1992

Souter, J., delivered the opinion for a unanimous Court.

*George Robinson Ragsdale* argued the cause for petitioners. With him on the briefs were *Gordon E. McCutchan, Robert M. Parsons, Craig G. Dalton, Jr., Francis M. Gregory, Jr.,* and *Margaret M. Richardson.*

*Christopher J. Wright* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Starr, Deputy Solicitor General Mahoney, Allen H. Feldman,* and *Elizabeth Hopkins.*

*Marion G. Follin III* argued the cause and filed a brief for respondent.*

JUSTICE SOUTER delivered the opinion of the Court.

In this case we construe the term "employee" as it appears in § 3(6) of the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 834, 29 U. S. C. § 1002(6), and read it to incorporate traditional agency law criteria for identifying master-servant relationships.

## I

From 1962 through 1980, respondent Robert Darden operated an insurance agency according to the terms of several

---

*\*Edward N. Delaney* and *Russell A. Hollrah* filed a brief for the National Association of Independent Insurers as *amicus curiae* urging reversal.

contracts he signed with petitioners Nationwide Mutual Insurance Co. et al. Darden promised to sell only Nationwide insurance policies, and, in exchange, Nationwide agreed to pay him commissions on his sales and enroll him in a company retirement scheme called the "Agent's Security Compensation Plan" (Plan). The Plan consisted of two different programs: the "Deferred Compensation Incentive Credit Plan," under which Nationwide annually credited an agent's retirement account with a sum based on his business performance, and the "Extended Earnings Plan," under which Nationwide paid an agent, upon retirement or termination, a sum equal to the total of his policy renewal fees for the previous 12 months.

Such were the contractual terms, however, that Darden would forfeit his entitlement to the Plan's benefits if, within a year of his termination and 25 miles of his prior business location, he sold insurance for Nationwide's competitors. The contracts also disqualified him from receiving those benefits if, after he stopped representing Nationwide, he ever induced a Nationwide policyholder to cancel one of its policies.

In November 1980, Nationwide exercised its contractual right to end its relationship with Darden. A month later, Darden became an independent insurance agent and, doing business from his old office, sold insurance policies for several of Nationwide's competitors. The company reacted with the charge that his new business activities disqualified him from receiving the Plan benefits to which he would have been entitled otherwise. Darden then sued for the benefits, which he claimed were nonforfeitable because already vested under the terms of ERISA. 29 U. S. C. § 1053(a).

Darden brought his action under 29 U. S. C. § 1132(a), which enables a benefit plan "participant" to enforce the substantive provisions of ERISA. The Act elsewhere defines "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit

of any type from an employee benefit plan . . . ."  § 1002(7). Thus, Darden's ERISA claim can succeed only if he was Nationwide's "employee," a term the Act defines as "any individual employed by an employer."  § 1002(6).

It was on this point that the District Court granted summary judgment to Nationwide.  After applying common-law agency principles and, to an extent unspecified, our decision in *United States* v. *Silk*, 331 U. S. 704 (1947), the court found that "'the total factual context' of Mr. Darden's relationship with Nationwide shows that he was an independent contractor and not an employee."  App. to Pet. for Cert. 47a, 50a, quoting *NLRB* v. *United Ins. Co. of America*, 390 U. S. 254 (1968).

The United States Court of Appeals for the Fourth Circuit vacated.  *Darden* v. *Nationwide Mutual Ins. Co.,* 796 F. 2d 701 (1986).  After observing that "Darden most probably would not qualify as an employee" under traditional principles of agency law, *id.*, at 705, it found the traditional definition inconsistent with the "'declared policy and purposes'" of ERISA, *id.*, at 706, quoting *Silk*, *supra*, at 713, and *NLRB* v. *Hearst Publications, Inc.*, 322 U. S. 111, 131–132 (1944), and specifically with the congressional statement of purpose found in § 2 of the Act, 29 U. S. C. § 1001.[1]  It therefore held that an ERISA plaintiff can qualify as an "employee" simply by showing "(1) that he had a reasonable expectation that he would receive [pension] benefits, (2) that he relied on this expectation, and (3) that he lacked the economic bargaining power to contract out of [benefit plan] forfeiture provisions."

---

[1] The Court of Appeals cited Congress's declaration that "many employees with long years of employment are losing anticipated retirement benefits," that employee benefit plans "have become an important factor affecting the stability of employment and the successful development of industrial relations," and that ERISA was necessary to "assur[e] the equitable character of such plans and their financial soundness."  796 F. 2d, at 706, quoting 29 U. S. C. § 1001.  None of these passages deals specifically with the scope of ERISA's class of beneficiaries.

922 F. 2d 203, 205 (CA4 1991) (summarizing 796 F. 2d 701 (CA4 1986)). The court remanded the case to the District Court, which then found that Darden had been Nationwide's "employee" under the standard set by the Court of Appeals. 717 F. Supp. 388 (EDNC 1989). The Court of Appeals affirmed. 922 F. 2d 203 (1991).[2]

In due course, Nationwide filed a petition for certiorari, which we granted on October 15, 1991. 502 U. S. 905. We now reverse.

## II

We have often been asked to construe the meaning of "employee" where the statute containing the term does not helpfully define it. Most recently we confronted this problem in *Community for Creative Non-Violence* v. *Reid*, 490 U. S. 730 (1989), a case in which a sculptor and a nonprofit group each claimed copyright ownership in a statue the group had commissioned from the artist. The dispute ultimately turned on whether, by the terms of § 101 of the Copyright Act of 1976, 17 U. S. C. § 101, the statue had been "prepared by an employee within the scope of his or her employment." Because the Copyright Act nowhere defined the term "employee," we unanimously applied the "well established" principle that

> "[w]here Congress uses terms that have accumulated settled meaning under ... the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms. ... In the past, when Congress has used the term 'employee' without defining it, we have concluded that Congress intended to describe the conven-

---

[2] The Court of Appeals also held that the Deferred Compensation Plan was a pension plan subject to regulation under ERISA, but that the Extended Earnings Plan was not. 922 F. 2d, at 208. We denied Darden's cross-petition for certiorari, which sought review of that conclusion. 502 U. S. 906 (1991).

tional master-servant relationship as understood by common-law agency doctrine. See, *e. g., Kelley* v. *Southern Pacific Co.,* 419 U. S. 318, 322–323 (1974); *Baker* v. *Texas & Pacific R. Co.,* 359 U. S. 227, 228 (1959) *(per curiam); Robinson* v. *Baltimore & Ohio R. Co.,* 237 U. S. 84, 94 (1915)." 490 U. S., at 739–740 (internal quotation marks omitted).

While we supported this reading of the Copyright Act with other observations, the general rule stood as independent authority for the decision.

So too should it stand here. ERISA's nominal definition of "employee" as "any individual employed by an employer," 29 U. S. C. § 1002(6), is completely circular and explains nothing. As for the rest of the Act, Darden does not cite, and we do not find, any provision either giving specific guidance on the term's meaning or suggesting that construing it to incorporate traditional agency law principles would thwart the congressional design or lead to absurd results. Thus, we adopt a common-law test for determining who qualifies as an "employee" under ERISA,[3] a test we most recently summarized in *Reid:*

> "In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired

---

[3] As in *Reid,* we construe the term to incorporate "the general common law of agency, rather than . . . the law of any particular State." *Community for Creative Non-Violence* v. *Reid,* 490 U. S. 730, 740 (1989).

party's role in hiring and paying assistants; whether
the work is part of the regular business of the hiring
party; whether the hiring party is in business; the pro-
vision of employee benefits; and the tax treatment
of the hired party." 490 U. S., at 751–752 (footnotes
omitted).

Cf. Restatement (Second) of Agency § 220(2) (1958) (listing
nonexhaustive criteria for identifying master-servant rela-
tionship); Rev. Rul. 87–41, 1987–1 Cum. Bull. 296, 298–299
(setting forth 20 factors as guides in determining whether
an individual qualifies as a common-law "employee" in vari-
ous tax law contexts). Since the common-law test contains
"no shorthand formula or magic phrase that can be applied
to find the answer, . . . all of the incidents of the relationship
must be assessed and weighed with no one factor being deci-
sive." *NLRB* v. *United Ins. Co. of America,* 390 U. S., at
258.

In taking its different tack, the Court of Appeals cited
*NLRB* v. *Hearst Publications, Inc.,* 322 U. S., at 120–129,
and *United States* v. *Silk,* 331 U. S., at 713, for the proposi-
tion that "the content of the term 'employee' in the context
of a particular federal statute is 'to be construed "in the light
of the mischief to be corrected and the end to be attained."'"
*Darden,* 796 F. 2d, at 706, quoting *Silk, supra,* at 713, in turn
quoting *Hearst, supra,* at 124. But *Hearst* and *Silk,* which
interpreted "employee" for purposes of the National Labor
Relations Act and Social Security Act, respectively, are
feeble precedents for unmooring the term from the common
law. In each case, the Court read "employee," which neither
statute helpfully defined,[4] to imply something broader than
the common-law definition; after each opinion, Congress

---

[4] The National Labor Relations Act simply defined "employee" to mean
(in relevant part) "any employee." 49 Stat. 450 (1935). The Social Secu-
rity Act defined the term to "include," among other, unspecified occupa-
tions, "an officer of a corporation." 49 Stat. 647.

amended the statute so construed to demonstrate that the usual common-law principles were the keys to meaning. See *United Ins. Co., supra,* at 256 ("Congressional reaction to *[Hearst]* was adverse and Congress passed an amendment . . . [t]he obvious purpose of [which] was to have the . . . courts apply general agency principles in distinguishing between employees and independent contractors under the Act"); Social Security Act of 1948, ch. 468, § 1(a), 62 Stat. 438 (1948) (amending statute to provide that term "employee" "does not include . . . any individual who, under the *usual common-law rules* applicable in determining the employer-employee relationship, has the status of an independent contractor") (emphasis added); see also *United States* v. *W. M. Webb, Inc.,* 397 U. S. 179, 183–188 (1970) (discussing congressional reaction to *Silk*).

To be sure, Congress did not, strictly speaking, "overrule" our interpretation of those statutes, since the Constitution invests the Judiciary, not the Legislature, with the final power to construe the law. But a principle of statutory construction can endure just so many legislative revisitations, and *Reid*'s presumption that Congress means an agency law definition for "employee" unless it clearly indicates otherwise signaled our abandonment of *Silk*'s emphasis on construing that term "'in the light of the mischief to be corrected and the end to be attained.'" *Silk, supra,* at 713, quoting *Hearst, supra,* at 124.

At oral argument, Darden tried to subordinate *Reid* to *Rutherford Food Corp.* v. *McComb,* 331 U. S. 722 (1947), which adopted a broad reading of "employee" under the Fair Labor Standards Act (FLSA). And *amicus* United States, while rejecting Darden's position, also relied on *Rutherford Food* for the proposition that, when enacting ERISA, Congress must have intended a modified common-law definition of "employee" that would advance, in a way not defined, the Act's "remedial purposes." Brief for United States as *Ami-*

*cus Curiae* 15–21.[5]   But *Rutherfood Food* supports neither position.   The definition of "employee" in the FLSA evidently derives from the child labor statutes, see *Rutherford Food, supra,* at 728, and, on its face, goes beyond its ERISA counterpart.   While the FLSA, like ERISA, defines an "employee" to include "any individual employed by an employer," it defines the verb "employ" expansively to mean "suffer or permit to work."   52 Stat. 1060, § 3, codified at 29 U. S. C. §§ 203(e), (g).   This latter definition, whose striking breadth we have previously noted, *Rutherford Food, supra,* at 728, stretches the meaning of "employee" to cover some parties who might not qualify as such under a strict application of traditional agency law principles.   ERISA lacks any such provision, however, and the textual asymmetry between the two statutes precludes reliance on FLSA cases when construing ERISA's concept of "employee."

Quite apart from its inconsistency with our precedents, the Fourth Circuit's analysis reveals an approach infected with circularity and unable to furnish predictable results.   Applying the first element of its test, which ostensibly enquires into an employee's "expectations," the Court of Appeals concluded that Nationwide had "created a reasonable expectation on the 'employees' part that benefits would be paid to them in the future," *Darden,* 796 F. 2d, at 706, by establishing "a comprehensive retirement benefits program for its insurance agents," *id.,* at 707.   The court thought it was simply irrelevant that the forfeiture clause in Darden's contract "limited" his expectation of receiving pension benefits, since "it is precisely that sort of employer-imposed condition on the *employee's* anticipations that Congress intended to out-

---

[5] While both Darden and the United States cite a Department of Labor "Opinion Letter" as support for their separate positions, see Brief for Respondent 34–35, Brief for United States as *Amicus Curiae* 16–18, neither suggests that we owe that letter's legal conclusions any deference under *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.,* 467 U. S. 837, 844 (1984).

law with the enactment of ERISA." *Id.,* at 707, n. 7 (emphasis added). Thus, the Fourth Circuit's test would turn not on a claimant's actual "expectations," which the court effectively deemed inconsequential, *ibid.,* but on his statutory entitlement to relief, which itself depends on his very status as an "employee." This begs the question.

This circularity infects the test's second prong as well, which considers the extent to which a claimant has relied on his "expectation" of benefits by "remaining for 'long years,' or a substantial period of time, in the 'employer's' service, and by foregoing other significant means of providing for [his] retirement." *Id.,* at 706. While this enquiry is ostensibly factual, we have seen already that one of its objects may not be: to the extent that actual "expectations" are (as in Darden's case) unnecessary to relief, the nature of a claimant's required "reliance" is left unclear. Moreover, any enquiry into "reliance," whatever it might entail, could apparently lead to different results for claimants holding identical jobs and enrolled in identical plans. Because, for example, Darden failed to make much independent provision for his retirement, he satisfied the "reliance" prong of the Fourth Circuit's test, see 922 F. 2d, at 206, whereas a more provident colleague who signed exactly the same contracts, but saved for a rainy day, might not.

Any such approach would severely compromise the capacity of companies like Nationwide to figure out who their "employees" are and what, by extension, their pension-fund obligations will be. To be sure, the traditional agency law criteria offer no paradigm of determinacy. But their application generally turns on factual variables within an employer's knowledge, thus permitting categorical judgments about the "employee" status of claimants with similar job descriptions. Agency law principles comport, moreover, with our recent precedents and with the common understanding, reflected in those precedents, of the difference between an employee and an independent contractor.

## III

While the Court of Appeals noted that "Darden most probably would not qualify as an employee" under traditional agency law principles, *Darden, supra,* at 705, it did not actually decide that issue. We therefore reverse the judgment and remand the case to that court for proceedings consistent with this opinion.

*So ordered.*