Harold **FRANKEL**, Plaintiff–Appellant,

v.

**BALLY, INC.**, Defendant–Appellee.

**No. 813, Docket 92–7861.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 4, 1993.
Decided Feb. 17, 1993.

David Jaroslawicz, New York City (Jaroslawicz & Jaros, of counsel), for plaintiff-appellant.

Frederick B. Locker, New York City (Carolyn Z. Slovis, Locker, Greenberg & Brainin, P.C., of counsel), for defendant-appellee.

Before KEARSE, ALTIMARI, and JACOBS, Circuit Judges.

ALTIMARI, Circuit Judge:

Plaintiff-appellant Harold Frankel appeals from a judgment of the United States District Court for the Southern District of New York (Pierre N. Leval, *Judge*) dismissing his complaint in its entirety following the grant of summary judgment for defen-dant-appellee Bally, Inc. ("Bally"). Frankel, who worked for Bally as a shoe sales representative, had filed a complaint alleging, *inter alia*, that his termination by Bally was improperly based on age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623(a)(1), New York Executive Law § 2961(1)(a), and the California Fair Employment and Housing Act ("CFEHA"), Cal.Gov't Code §§ 12940(h) and 12941(a).

The district court held that because Bally had entered into a sales agreement with Harold Frankel, Inc., a corporation formed by Frankel, and not with Frankel in his individual capacity, Frankel was not an "employee" of Bally within the meaning of the ADEA or analogous state discrimination laws. As a result, the district court found that Frankel could not assert a claim against Bally under either the ADEA or analogous state laws and dismissed the complaint after entering summary judgment in favor of Bally. On appeal, Frankel contends that the district court adopted a narrow definition of the term "employee" that placed undue emphasis upon the corporate form Frankel had devised and did not consider other factors concerning his relationship with Bally.

For the reasons set forth below, the judgment of the district court is vacated and the case remanded for further proceedings not inconsistent with this opinion.

## BACKGROUND

Harold Frankel worked as a shoe sales representative for Bally between 1975 and his termination, which was effective October 30, 1988. Under the terms of the parties' initial agreement entered into in December 1975, Frankel was referred to as a "commission salesman" under a term of "employment" with Bally.

On July 5, 1979, Frankel formed Harold Frankel, Co. ("HFC"), a California corporation of which he was the sole shareholder and permanent employee. According to Frankel, he incorporated in order to avail himself of certain pension benefits that were not provided by Bally. Bally was aware of the creation of the corporation

and, in fact, had hired other sales representatives who had also chosen to incorporate. In 1984, Bally asked all of its sales representatives to enter into a new contract under which they were specifically labelled "independent contractors." HFC and Bally were the named parties to one such agreement. Both Bally and Frankel agree that, despite certain changes, Frankel's duties remained unchanged as a result of this agreement.

In a letter dated September 30, 1988, Bally informed Frankel that his contract with Bally was being terminated effective October 30, 1988. The proffered reason was that a sales manager at a department store had complained about Frankel. Frankel was 61 years of age at the time of his termination.

Frankel commenced an age discrimination action in the United States District Court for the Northern District of California. This action was voluntarily dismissed by Frankel on September 20, 1989 pursuant to Fed.R.Civ.P. 41(a). On October 27, 1989, Frankel commenced the present action against Bally in Alameda County Superior Court. Bally removed the action to federal court and the case was subsequently transferred to the United States District Court for the Southern District of New York (Leval, J.).

Bally moved for summary judgment on the ground that Frankel was an "independent contractor" and thus did not qualify for the protection of either the ADEA or state law. In a Memorandum and Order dated January 23, 1992, the district court denied this motion without prejudice to renew and asked the parties to address "the ramifications of the fact that the Agreement is between Bally and HFC."

Bally filed a second motion for summary judgment. The district court granted the motion, finding that Frankel was not an employee of Bally within the meaning of the ADEA or state law. The district court based its determination on its reading of *Hyland v. New Haven Radiology Assocs., P.C.,* 794 F.2d 793, 796 (2d Cir.1986), which stated that the protection of the ADEA "extends only to those individuals who are in a direct employment relationship with an employer." As the district court noted, it was undisputed that:

(1) Bally contracted with HFC, not Frankel; (2) HFC is the only entity Frankel identifies as an employer on his income tax; (3) HFC, and not Bally, paid Frankel salary and health benefits and made contributions to Frankel's pension fund.

From these facts the district court concluded that Frankel did not stand in a "direct employment relationship" with Bally, and that, therefore, his claims under the ADEA and analogous state statutes failed as a matter of law. On this basis, the district court granted Bally's motion for summary judgment and dismissed Frankel's complaint in its entirety.

Frankel now appeals contending that the district court erred in finding that he was not an employee of Bally.

## DISCUSSION

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Levin v. Analysis & Technology, Inc.,* 960 F.2d 314, 316 (2d Cir.1992). We review the district court's grant of summary judgment *de novo. See Levin,* 960 F.2d at 316.

Section 623(a)(1) of the ADEA provides: "It shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA defines "employee" as "an individual employed by any employer." 29 U.S.C. § 630(f). The ADEA provides no further guidance as to the scope of the Act's definition of an employee. The central dispute between the parties concerns whether the district court properly considered relevant factors in determining whether Frankel was an "employee" or, as Bally contends,

an "independent contractor" for the purposes of the ADEA. The ADEA provides no coverage for independent contractors. *See Hyland,* 794 F.2d at 797.

 In different contexts, courts have developed three separate tests to analyze whether an individual's status is that of either an independent contractor or an employee. The traditional test arises out of the common law of agency and focuses primarily on the "hiring party's right to control the manner and means by which the product is accomplished." *Community for Creative Non-Violence v. Reid,* 490 U.S. 730, 751, 109 S.Ct. 2166, 2178, 104 L.Ed.2d 811 (1989). Among the other factors to be considered in this inquiry are:

the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* at 751–52, 109 S.Ct. at 2178 (citing Restatement (Second) of Agency § 220(2) (1958)) (footnotes omitted).

The common law agency test was found too restrictive to encompass the broader definition of the employment relationship contained in the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 201 *et seq.* The FLSA "defines the verb 'employ' expansively to mean 'suffer or permit to work.'" *Nationwide Mut. Ins. Co. v. Darden,* — U.S. —, —, 112 S.Ct. 1344, 1350, 117 L.Ed.2d 581 (1992) (quoting 29 U.S.C. § 203(g)). This definition "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Id.; see also Rutherford Food Corp. v. McComb,* 331 U.S. 722, 728, 67 S.Ct. 1473, 1475, 91 L.Ed. 1772 (1947).

Recognizing the expansive nature of the FLSA's definitional scope and the remedial purpose underlying the legislation, courts construing this statute have adopted the "economic realities" test, under which individuals are considered employees if "as a matter of economic reality [they] are dependent upon the business to which they render service." *Bartels v. Birmingham,* 332 U.S. 126, 130, 67 S.Ct. 1547, 1549, 91 L.Ed. 1947 (1947); *see Frasier v. General Electric Co.,* 930 F.2d 1004, 1008 (2d Cir. 1991); *Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1058–59 (2d Cir.1988) (listing other factors); *see also Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 965 (6th Cir.1991); *Donovan v. Sabine Irrigation Co.,* 695 F.2d 190, 194 (5th Cir.), *cert. denied,* 463 U.S. 1207, 103 S.Ct. 3537, 77 L.Ed.2d 1387 (1983); *Real v. Driscoll Strawberry Assocs., Inc.,* 603 F.2d 748, 754 (9th Cir.1979).

The choice of a standard in the context of anti-discrimination legislation posed something of a conundrum. Title VII of The Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* and the ADEA have definitions of the term "employee" that are almost identical to the definition in the FLSA. *Compare* 29 U.S.C. § 630(f) (ADEA) *and* 42 U.S.C. § 2000e(f) (Title VII) *with* 29 U.S.C. § 203(e) (FLSA). However, the ADEA and Title VII do not contain the same expansive definition of the term "employ" used in the FLSA. Faced with this difficulty, many courts focused on the purposes underlying the anti-discrimination laws and found that, as with the FLSA, the strict common law agency test was inconsistent with the broad remedial scope of these statutes. *See, e.g., Mares v. Marsh,* 777 F.2d 1066, 1067 n. 1 (5th Cir. 1985). As a result, some courts applied the economic realities test to actions arising under Title VII and the ADEA. *See, e.g., id.* at 1067 n. 2; *Lilley v. BTM Corp.,* 958 F.2d 746, 750 (6th Cir.) (employing "economic realities test" to action under ADEA), *cert. denied,* — U.S. —, 113 S.Ct. 376, 121 L.Ed.2d 287 (1992).

 The wider trend is to apply a third test, the so-called "hybrid test," which com-

bines both the economic realities test and the common law agency test. *See, e.g., Oestman v. Nat'l Farmers Union Ins. Co.,* 958 F.2d 303, 305 (10th Cir.1992); *Garrett v. Phillips Mills, Inc.,* 721 F.2d 979, 981 (4th Cir.1983); *E.E.O.C. v. Zippo Mfg. Co.,* 713 F.2d 32, 38 (3d Cir.1983); *see also Hickey v. Arkla Indus., Inc.,* 699 F.2d 748, 751–52 (5th Cir.1983). Under the hybrid test, a court examines the economic realities of the relationship but considers "the extent of the employer's right to control the 'means and manner' of the worker's performance" as the most important factor. *Spirides v. Reinhardt,* 613 F.2d 826, 831 (D.C.Cir.1979). Like the agency test, the hybrid test offers a non-exhaustive list of factors to be considered, which are drawn from the law of agency and in large part duplicate those listed as part of the common law agency test. *Compare id.* at 832 *with Reid,* 490 U.S. at 751–52, 109 S.Ct. at 2178.

We have not adopted an analysis to be applied in determining whether an individual is an "employee" or an "independent contractor" under the ADEA or Title VII, although we have noted the emergence of the hybrid test. *See Hyland,* 794 F.2d at 797. District courts within this Circuit have adopted conflicting tests. *Compare Frishberg v. Esprit de Corp., Inc.,* 778 F.Supp. 793, 798–99 (S.D.N.Y.1991) (applying hybrid test to ADEA action) *and Tadros v. Coleman,* 717 F.Supp. 996, 1004 (S.D.N.Y.1989) (applying hybrid test to Title VII action), *aff'd,* 898 F.2d 10 (2d Cir.), *cert. denied,* 498 U.S. 869, 111 S.Ct. 186, 112 L.Ed.2d 149 (1990) *with Hill v. New York City Bd. of Educ. et al.,* 808 F.Supp. 141, 147 (E.D.N.Y.1992) (applying economic realities test to Title VII action) *and Clancey v. American Management Ass'n, Inc.,* 781 F.Supp. 286, 288 (S.D.N.Y.1992) (applying economic realities test to ADEA action).

Guidance on this issue was recently provided by the Supreme Court in *Nationwide Mut. Ins. Co. v. Darden,* — U.S. ——, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992). *Darden* held that where a statute containing the term "employee" does not helpfully define it, the common law agency test should be applied. *Id.* at ——, 112 S.Ct. at 1348. In so holding, the Supreme Court specifically rejected its earlier reasoning that the definitional scope of the term should be construed "in the light of the mischief to be corrected and the end to be attained." *United States v. Silk,* 331 U.S. 704, 713, 67 S.Ct. 1463, 1468, 91 L.Ed. 1757 (1947) (quoting *NLRB v. Hearst Publications, Inc.,* 322 U.S. 111, 124, 64 S.Ct. 851, 857, 88 L.Ed. 1170 (1944)). This eliminates the chief rationale for employing a broader test in the context of anti-discrimination legislation—namely, that a more liberal construction would better effect the remedial purposes of the ADEA and similar legislation. *See Hyland,* 794 F.2d at 796.

■ Furthermore, *Darden* specifically excepted the FLSA from the application of the agency test based on this statute's expansive definition of the term "employ" to mean "suffer or permit to work." — U.S. at ——, 112 S.Ct. at 1350. Since the ADEA does not contain this expansive definition of the term "employ," *Darden* mandates the application of the common law agency test. We therefore hold that the question of whether an individual is an "employee" or an "independent contractor" within the meaning of the ADEA must be determined in accordance with common law agency principles.

We note that in practice there is little discernible difference between the hybrid test and the common law agency test. Both place their greatest emphasis on the hiring party's right to control the manner and means by which the work is accomplished and consider a non-exhaustive list of factors as part of a flexible analysis of the "totality of the circumstances." The common law agency test contains "no shorthand formula or magic phrase that can be applied to find the answer, ... all of the incidents of the relationship must be assessed and weighed with no one factor being decisive." *Id.* at ——, 112 S.Ct. at 1349 (citation omitted). In appropriate circumstances, factors relating to an individual's economic dependence upon the hiring party may be taken into account under the common law agency test outlined in *Reid.*

See, e.g., *Roth v. American Hosp. Supply Corp.*, 965 F.2d 862, 867 (10th Cir.1992).

■ Turning to Frankel's case, we note that the district court did not undertake any of the above multi-factored approaches. Instead, the court held that because Frankel had established HFC as the corporate entity under which he did business, he had not established a "direct" employer relationship with Bally. The district court's holding was predicated on an interpretation of *Hyland* as establishing a *per se* rule that under the ADEA an individual who does business as a corporate entity can not be recognized as an employee of the company for whom he performs services.

We agree with the district court that Frankel's establishment of HFC, and HFC's payment of salary and benefits to Frankel are important factors to be weighed in an analysis under the common law agency test. However, the corporate form under which a plaintiff does business is not dispositive in a determination of whether an individual is an employee or an independent contractor within the meaning of the ADEA. Indeed, no *per se* rule applies in such circumstances.

We note that the district court's dismissal of Frankel's state claims was predicated on its holding that both New York Executive Law § 296 and the CFEHA apply the same general definitional standards as the ADEA. We therefore vacate the dismissal of both Frankel's ADEA claim and his state-based discrimination claims and remand to the district court for reconsideration.

## CONCLUSION

In light of the foregoing, the judgment of the district court is vacated and the case remanded.