James F. COX

v.

**MASTER LOCK CO.**

Civ. A. No. 92–0287.

United States District Court,
E.D. Pennsylvania.

March 23, 1993.

James F. Cox, Ambler, PA, pro se.

Marguerite S. Walsh, Philadelphia, PA, for defendant.

## MEMORANDUM

WALDMAN, District Judge.

Plaintiff asserts a claim under the Age Discrimination in Employment Act ("ADEA"), alleging that defendant terminated his employment because of his age. Defendant has moved for summary judgment on the ground that plaintiff was not an "employee" of defendant and thus is not entitled to the relief sought as a matter of law.

### I. LEGAL STANDARD

A motion for summary judgment requires the court to consider whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Only facts that may affect the outcome of a case under applicable law are "material." "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48, 106 S.Ct. at 2510.

All reasonable inferences from the record must be drawn in favor of the non-movant. *Id.* at 255, 106 S.Ct. at 2513. Although the movant has the initial burden of demonstrating an absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof. *See J.F. Feeser, Inc. v. Serv–A–Portion,* 909 F.2d 1524, 1531 (3d Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct.

1313, 113 L.Ed.2d 246 (1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

## II. FACTS

The pertinent facts are uncontroverted or set forth in a light most favorable to plaintiff, and are as follow.

From 1972 until 1986, Mr. Cox worked as an "Independent Manufacturer's Representative" ("IMR") for Master Lock pursuant to a series of written agreements executed by Master Lock and Jimcox, Inc., an entity incorporated by plaintiff. Pursuant to the agreements, Mr. Cox was authorized to sell defendant's products in a territory encompassing northeastern Pennsylvania and portions of Philadelphia. The agreement in effect in August 1986 had been executed on March 1, 1985. Mr. Cox maintained and worked out of an office in Glenside and then Ambler, Pa. The defendant corporation manufactures locks and is headquartered in Milwaukee.

Either party had a right to terminate the IMR agreement by written notice to the other at any time and for any reason. The agreement provided that the sole basis of compensation was commissions on sales. Plaintiff assumed responsibility for payment of travel, insurance, office, equipment, supply and any other expenses which were incurred by him in the performance of the contract. Jimcox, Inc. had full responsibility for the withholding and payment of social security and income taxes for plaintiff. Jimcox was given discretion to conduct its business in "such manner as it sees fit."

Jimcox was not allowed to sell products manufactured by defendant's competitors or to sell at prices other than those set by Master Lock. Master Lock had the right to accept or reject any orders placed with plaintiff. Plaintiff was required to submit sales and marketing reports to defendant.[1]

Mr. Cox was not required to report physically to defendant at any time but was required to maintain telephone contact. He set his own work hours and vacation times, and received no pension or insurance benefits from defendant. Mr. Cox received no sales training or performance reviews from Master Lock. On two occasions between May and August of 1986, he was visited by defendant's regional sales manager who accompanied and observed plaintiff while he made several sales calls. When asked at his deposition if it was true that his sales efforts were not supervised by Master Lock, plaintiff testified "That's correct."

The agreement specified that Jimcox had "no authority to act on behalf of the Company as an agent or otherwise, and neither it nor its employees shall represent itself or themselves as agents or employees of the Company."

On August 26, 1986, Master Lock notified plaintiff in writing that it was terminating the IMR agreement as of September 1, 1986.[2] Mr. Cox was 62 years-old at the time.

## III. DISCUSSION

The ADEA protects only persons who are "employees." *E.E.O.C. v. Zippo Mfg. Co.*, 713 F.2d 32, 33 (3d Cir.1983). Whether a plaintiff is an "employee" for purposes of ADEA is a question of law to be determined by the court in the absence of disputed material underlying facts. *See Golden v. A.P. Orleans, Inc.*, 681 F.Supp. 1100, 1102 n. 2 (E.D.Pa.1988).

The statute does not meaningfully define the term "employee." It simply provides that an "employee" is "an individual employed by any employer." *See* 29 U.S.C. § 630(f).

The Third Circuit has adopted a so-called "hybrid test," combining the traditional test for common-law agency with modern economic realities, for determining whether a

---

1. In his brief, plaintiff states that he was required to submit monthly "Territorial Marketing Plans" and forecasts. In his deposition, however, he testified that these Plans were submitted annually.

2. Defendant states that it terminated the agreement because plaintiff was not fulfilling his obligations and was the subject of customer complaints. Plaintiff states that his performance was "excellent." In deciding this motion, the court will assume that plaintiff was performing his work capably.

person is an employee or independent contractor for purposes of ADEA. *Zippo,* 713 F.2d at 38. More recently, however, the U.S. Supreme Court in *Nationwide Mut. Ins. Co. v. Darden,* — U.S. ——, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), an ERISA case, articulated a general rule of utilizing the common-law agency standard to define the meaning of "employee" in statutes in which Congress has not otherwise helpfully defined the term. *Id.* at ——, 112 S.Ct. at 1348–49 (abandoning standard of *United States v. Silk,* 331 U.S. 704, 713, 67 S.Ct. 1463, 1468, 91 L.Ed. 1757 (1947) of construing "employee" "in the light of the mischief to be corrected and the end to be attained" from which hybrid test derives). *See also Frankel v. Bally, Inc.,* 987 F.2d 86 (2d Cir. 1993) (*Darden* mandates application of common-law agency test in ADEA cases).

▬▬ The court believes that *Darden* requires the application of the common-law agency test rather than a hybrid test in determining whether someone is an employee for purposes of ADEA. Under either test, however, the result in this case would be the same. Most of the twelve factors utilized by the Third Circuit in its hybrid test reflect common-law agency principles and both tests "place the greatest emphasis on the hiring party's right to control the manner and means by which the work is accomplished." *Id.* at 90; *Zippo,* 713 F.2d at 37. Applying either test, the plaintiff is not an employee for purposes of ADEA. Indeed, the facts of this case, construed most favorably to plaintiff, are quite similar to those in *Zippo,* in which the Third Circuit, applying the hybrid test, affirmed a grant of summary judgment on the ground that the plaintiffs were independent contractors.

The pertinent factors in the common-law agency test are:

1) the alleged employer's right to control the manner and means of the employment;

2) the skill required;

3) the source of the instrumentalities and tools;

4) the location of the work;

5) the duration of the relationship between the parties;

6) whether the hiring party has the right to assign additional projects;

7) the hired party's discretion over hours;

8) the method of payment;

9) the hired party's role in hiring and paying assistants;

10) whether the work is part of the regular business of the hiring party;

11) whether the hiring party is in business;

12) the provision of employee benefits; and,

13) the hired party's tax treatment.

*Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 751–52, 109 S.Ct. 2166, 2178–79, 104 L.Ed.2d 811 (1989).

As noted, the most important factor in the hybrid test is "the extent of the employer's right to control the 'means and manner' of the worker's performance." *See Zippo,* 713 F.2d at 37 (quoting *Spirides v. Reinhardt,* 613 F.2d 826, 831 (D.C.Cir.1979)). The other pertinent factors are:

(1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the 'employer' or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; *i.e.,* by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the 'employer'; (9) whether the worker accumulates retirement benefits; (10) whether the 'employer' pays social security taxes; and (11) the intention of the parties.

*Id.*

Defendant exercised virtually no control over the "means and manner" of plaintiff's sales practices. Plaintiff had the independence to establish his own business organization and indeed operated through an entity

which he incorporated. Although he provided Master Lock with a summary of his sales contacts, Mr. Cox was free to set his own hours and vacation times. Mr. Cox had a contractual right to conduct his business "in such manner as [he] sees fit."

Plaintiff provided his own supplies, equipment, place of business and insurance. He was paid solely by commission and he paid for all travel and other expenses incurred in his sales efforts. Plaintiff received no annual leave or retirement benefits. He was responsible for paying his own income and social security taxes.

Plaintiff's work was an important part of defendant's business, however, contract exclusions for government business and designated house accounts make clear that defendant used IMR's to supplement other direct sales. The parties had maintained a relationship for fourteen years, however, they expressly agreed that plaintiff was not and was not to represent himself as an agent or employee of defendant. Either party had the right to terminate their agreement at any time and for any reason. *See Zippo*, 713 F.2d at 38.

Whichever test one utilizes, the pertinent factors militate heavily against a finding of employment. The court is compelled to conclude from the record adduced that plaintiff was an independent contractor and was not covered by ADEA. Accordingly, defendant's motion will be granted.