Betty **LATTANZIO**

v.

**SECURITY NATIONAL BANK.**

Civ. A. No. 92–CV–5554.

United States District Court, E.D. Pennsylvania.

June 17, 1993.

Gary M. Tocci and Eric Hoffman, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for plaintiff.

Andrew S. Gordon, Buchanan Ingersoll P.C., Harrisburg, PA, for defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

### I. INTRODUCTION

Betty Lattanzio initiated this employment discrimination action against Security National Bank (the Bank) pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.* and the Pennsylvania Human Relations Act (PHRA), 43 Pa.C.S.A. § 951 *et seq.* Lattanzio alleges that the Bank discriminated against her on the basis

of her age and sex in discharging her from employment on December 19, 1990.

Before the Court is the Bank's motion to dismiss the complaint under Fed.R.Civ.P. 12(b)(1) and (6). The Bank contends that because it employed fewer than fifteen individuals during 1989 and 1990, the Plaintiff's complaint fails to state a cause of action and this Court lacks subject matter jurisdiction under Title VII. Lacking a jurisdictional foundation under federal law, the Bank further asserts that the Plaintiff's pendent claims under the PHRA, 43 Pa.C.S.A. § 951 et seq. must also be dismissed.

## II. BACKGROUND

On or about June 1, 1988, the Bank hired Lattanzio as Vice–President and she served in that capacity until August, 1990 when the then-President of the Bank resigned. The Bank subsequently promoted Lattanzio to Executive Vice–President in charge of the Bank's day-to-day operations. Although Lattanzio applied for the position of bank president and had more than twenty years of experience in the banking industry, the bank hired a thirty-four-year-old male candidate with only ten years experience in the field. After two months in this position, the new President terminated Lattanzio's employment without prior notice or explanation. Lattanzio, 56 years old at the time of her firing and who had received numerous honors, accolades and pay raises throughout her tenure with the Bank, then filed complaints raising sex and age discrimination claims with both the Pennsylvania Human Relations and the Equal Employment Opportunity Commissions. After receiving the right to sue letter from the EEOC, Lattanzio commenced this lawsuit.

## III. STANDARD

■ In considering a motion to dismiss for failure to state a claim upon which relief may be granted, the court must accept all of the allegations recited in the complaint as true and construe them in a light most favorable to the plaintiff. Hough/Loew Associates, Inc. v. CLX Realty Co., 760 F.Supp. 1141 (E.D.Pa.1991), citing Angelastro v. Prudential–Bache Securities, Inc., 764 F.2d 939

(3rd Cir.1985). In order to prevail on a motion to dismiss, the defendant must establish that the plaintiff can prove no set of facts which would entitle her to relief. Hendrix v. Fleming Companies, 650 F.Supp. 301 (W.D.Okla.1986), citing inter alia Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1971); see also Oates v. Sobolevitch, 914 F.2d 428, 431 (3rd Cir.1990) (Note 8). However, where the motion is one to dismiss for want of jurisdiction, the burden of proving that the requisite jurisdiction exists rests upon the plaintiff who must submit affidavits and other relevant evidence to resolve the factual dispute concerning this issue. Norman v. Levy, 756 F.Supp. 1060, 1062 (N.D.Ill.1990).

## IV. DISCUSSION

■ Title VII prohibits employees from engaging in unlawful employment practices against any individual. 42 U.S.C. §§ 2000e–2(a)(1), (a)(2). However, to fall within Title VII's purview, an employer must be "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year ..." 42 U.S.C. § 2000e(b). Title VII vaguely defines "employee" as "an individual employed by an employer...." 42 U.S.C. § 2000e(f).

Resolution of the Defendant's motion to dismiss for want of subject matter jurisdiction hinges upon first determining who is considered an "employee" under Title VII, and second, whether or not the Bank had fifteen or more employees during either 1989 or 1990. See Norman v. Levy, 767 F.Supp. 1441, 1443 (N.D.Ill.1991); see also Nationwide Mutual Insurance Co. v. Darden, —— U.S. ——, ——, 112 S.Ct. 1344, 1348, 117 L.Ed.2d 581 (1992). Specifically, Lattanzio alleges that five individuals, Carolyn Gibbs, James J. Lennon, Howard E. Kalis, III, Robert Hartenstine and Joseph M. Wheeler should be considered "employees" under Title VII. Any two of these five, if found to be "employees," brings the Bank within Title VII's purview.

However, for the reasons outlined below, we find that none of the five individuals can

be considered employees as contemplated by Title VII. As a result, we must conclude that the Bank is not an "employer" under Title VII and the Bank's motion to dismiss the complaint shall be granted.

■ The common-law agency test examines the totality of the circumstances in determining who is an employee. *Frankel v. Bally, Inc.,* 987 F.2d 86, 90 (2d Cir.1993). It contains "no shorthand formula or magic phrase that can be applied to find the answers, ... all of the incidents of a relationship must be assessed and weighed with no one factor being decisive." *Darden,* —— U.S. at ——, 112 S.Ct. at 1349.

The test, however, places its greatest emphasis on the hiring party's right to control the manner and means by which the work is accomplished. *Frankel,* 987 F.2d at 90; *Cox v. Master Lock Co.,* 815 F.Supp. 844, 846 (E.D.Pa.1993). Other factors include means of the employment; the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; the hiring party's right to assign additional duties; the hired party's discretion over hours; method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in the business; the provisions of employee benefits; and the hired party's tax treatment. *United States v. Reid,* 490 U.S. 730, 751, 109 S.Ct. 2166, 2178–79, 104 L.Ed.2d 811 (1989).

### A. Carolyn Gibbs

The Third Circuit previously had adopted the "hybrid test," a combination of the common-law agency and economic realities tests, in determining whether an individual is an "employee" under Title VII. *E.E.O.C. v. Zippo Manufacturing Co.,* 713 F.2d 32, 38 (1983). Recently, however, the Supreme Court in *Nationwide Mutual Insurance Co. v. Darden,* —— U.S. ——, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) held that in statutes where Congress does not helpfully define "employee," courts should employ the common-law agency test to determine who is an employee. *Cox v. Master Lock Co.,* 815

F.Supp. 844, 846 (E.D.Pa.1993) *citing Darden,* —— U.S. at ——, 112 S.Ct. at 1348–49. In so holding, the Supreme Court explicitly abandoned *United States v. Silk,* 331 U.S. 704, 713, 67 S.Ct. 1463, 1468, 91 L.Ed. 1757 (1947), the standard upon which the hybrid test was based. *Frankel v. Bally, Inc.,* 987 F.2d 86, 90 (2d Cir.1993); *Cox,* 815 F.Supp. at 846.

■ Under this test, Ms. Gibbs cannot be counted as an employee against the Bank for Title VII purposes. First, Moonlight Office Cleaners hired, Vermeesch Depo.Tr. 82, trained, *Id.* at 83, and supervised, *Id.* at 30, Ms. Gibbs. They controlled how she did her work in the Bank. *Id.* at 85. Moonlight paid her on a weekly basis and withheld the appropriate taxes. *Id.* at 35, 60. Moonlight also provided and resupplied the materials Ms. Gibbs needed to do her job. *Id.* at 44–45.

Second, the Bank had no control over her performance. Ms. Gibbs controlled her own hours as long as it was after banking hours. *Id.* at 31. Outside of minor tasks, any additional duties or tasks were coordinated through Moonlight who then decided by whom, when and how the task was to be accomplished. *Id.* at 58–67. If the Bank was unsatisfied with Ms. Gibbs performance for any reason, Moonlight reserved the right to make the decision to replace her. *Id.* at 30–31.

Lastly, the Bank had no control over her employment opportunities. Of her own choice, Ms. Gibbs turned down other employment opportunities under Moonlight and opted to quit Moonlight because of physical ailments. *Id.* at 85. The Bank, therefore, was not an economic necessity for her. *Id.*

■ The Plaintiff's reliance on the third-party interference theory in order to establish Ms. Gibbs as a Bank employee is unfounded. This theory contemplates a situation where the defendant, sponsoring organization interferes with the plaintiff's employment opportunities with a third party. *Va-*

*kharia v. Swedish Covenant Hospital,* 765 F.Supp. 461, 464 (N.D.Ill.1991).[1]

The theory does not apply. First, the Bank is not the sponsoring organization. Second, third-party interference claims still require an employment relationship. *Id.* at 465. As discussed earlier, Ms. Gibbs is not a Bank employee under Title VII. *supra* at pp. 89–90.

### B. *James J. Lennon*

■ The Plaintiff asserts that although Lennon was an independent contractor, he received compensation for his services and should therefore be considered an "employee" under Title VII. However, the fact that he received compensation alone is not dispositive. Given the totality of the circumstances, Lennon is not an employee under Title VII.

In *Frankel v. Bally, Inc.,* the Second Circuit Court of Appeals vacated the lower court's decision to dismiss an ADEA claim. 987 F.2d at 87. The lower court dismissed the claim reasoning that a commission-only salesman did not have a "direct" employment relationship with the defendant. *Id.* at 91. The Court of Appeals held, however, that "the corporate form under which a plaintiff does business is not dispositive" in determining whether or not an individual is an employee under Title VII. *Id.* The court emphasized that no one "per se rule" applies in such circumstances. *Id.*

In contrast, in *Cox,* the court granted the defendant's motion for summary judgment holding that an "Independant Manufacturer's Representative" was not an "employee" under Title VII. 815 F.Supp. at 847. The court employed the agency test in finding that the defendant had no control over the "means and manner" of the plaintiff's sales practice. *Id.* at 846.

Similarly, the Bank had no control over the "means and manner" over which Lennon performed his duties as an accounting and business consultant to the Bank. First, Lennon's primary business was as a managing partner for the accounting firm of Maillie, Falcomiero

and Co. Lennon Declaration, p. 1. As such, his duties included consulting a number of businesses of which the Bank was but one. *Id.* Outside of attending those Bank committee meetings that he was a member of, Lennon managed his own time and assets. *Id.* at 2.

Second, Lennon performed his duties purely in his capacity as a partner of his firm. *Id.* He exercised his own judgment apart from Bank supervision; he frequently used his parent firm's facilities; and all consulting fees were received by and deposited in the firm's bank account and recorded as income. *Id.* Additionally, the Bank did not deduct any taxes from the compensation paid to Lennon as a consultant to the Board of Directors. *Id.* at 2.

### C. *Robert Hartenstine and Joseph M. Wheeler*

■ The Plaintiff contends that although Hartenstine and Wheeler are directors, they performed duties traditionally within the realm of an employee and, therefore, should be considered employees pursuant to Title VII. However, although Hartenstine and Wheeler were very involved in the Bank's success, their actions were in keeping with the traditional employer's role. Consequently, neither Hartenstine nor Wheeler are employees under Title VII.

■ Although a director has traditionally been considered an employer, "a director may accept duties that make him also an employee." *Grantham v. Beatrice Co.,* 776 F.Supp. 391, 403 (N.D.Ill.1991) *quoting Chavero v. Local 241, Division of the Amalgam Transit,* 787 F.2d 1154, 1157 (7th Cir. 1986) (per curiam).

Central to the inquiry is whether an employer-employee relationship exists. *Chavero* at 1157. Courts have capsuled the common-law agency test into three factors: 1) whether the director has undertaken traditional employee duties; 2) whether the director was regularly employed by a separate entity; and 3) whether the director reported to someone higher. *Id.* at 1157.

---

1. For example, in *Sibley Memorial Hospital v. Wilson,* a male private duty nurse alleged sex discrimination against his sponsoring hospital after the hospital prevented him from reporting to a requesting patient because of his sex. 488 F.2d 1338, 1342 (D.C.Cir.1973).

In *Chavero*, the plaintiff brought an employment discrimination action against her former employer under Title VII. *Id.* at 1155. The court, however, granted summary judgment finding that since the directors were not employees, the union did not have the requisite fifteen employees. *Id.* at 1157. The court reasoned first, that the director did not perform employee functions; union officers under the board's direction performed the daily operations. *Id.* Second, the board reported to no one other than itself. *Id.* And lastly, all of the directors held regular paying jobs for an entirely separate organization. *Id.* at 1156. *See also Schoenbaum v. Orange County Center for Performing Arts,* 677 F.Supp. 1036 (C.D.Cal. 1987) (holding that directors are not employees when they perform traditional functions as employers.)

In contrast, the court in *Grantham* denied a motion to dismiss the complaint on similar jurisdictional grounds. 776 F.Supp. at 405. The court found that the directors managed day-to-day operations in a "hands-on" manner and received a corresponding salary. *Id.* at 404. Second, there was no suggestion that the directors were regularly employed elsewhere. *Id.* The court found the first two factors were compelling enough that it made its determination despite the lack of evidence needed to determine whether the board answered to anyone else. *Id.;* *see also E.E.O.C. v. Pettegrove Truck Service,* 716 F.Supp. 1430 (S.D.Fla.1989) (Finding that although they did not receive salaries, two women were "employees" because they performed traditional employee duties).

Here, however, both Hartenstine and Wheeler performed duties traditionally expected of directors. The Comptroller's Handbook for National Examiners details the board director's duties to include: effectively supervising the bank's affairs; adopting and following sound policies and objectives; and being informed of the bank's conditions and management policies. Wenner Declaration, exhibit 1. The Plaintiff has not asserted that Hartenstine and Wheeler participated in any activities that were inconsistent with a director's duties and responsibilities. *See* Lattanzio Affidavit, pp. 6–7.

Second, both were regularly employed by separate organizations. Hartenstine worked full-time as vice-president and treasurer of both Sunnybrook Enterprises, Inc. and Sunnybrook Foods, Ltd. Hartenstine Declaration, p. 2. Wheeler served as First Vice-President of a non-profit organization and had a controlling interest in an electronics business. Wheeler Declaration, p. 1.

Third, the evidence does not demonstrate that either Hartenstine or Wheeler answered to anyone other than themselves.

Lastly, their compensation was in keeping with their position as bank directors. *See* Hartenstine Declaration, p. 2 and Wheeler Declaration, p. 2. Additionally, the Bank did not deduct taxes from their compensation. *Id.*

### D. *Howard E. Kalis, III*

The Plaintiff contends that Kalis should be considered an "employee" because of his service as the Acting Chief Executive Officer. However, the determination of who is an "employee" should not turn on a label but rather on the individual's particular duties. *See Pettegrove,* 716 F.Supp. at 1433. Giving all reasonable inferences to the non-moving party, the Plaintiff failed to provide evidence that Kalis actually performed day-to-day duties as CEO. *See* Lattanzio Affidavit, p. 7 and exhibit D attached. Additionally, he was regularly employed as a partner in a law firm, and, similar to Hartenstine and Wheeler, he received compensation commensurate to a director, he answered to no one but the Board itself, and the Bank did not withhold taxes. Kalis Declaration, pp. 1–2.

Even if Kalis had performed CEO duties, he served as CEO for only eight weeks, well short of the "twenty or more calendar weeks" required by Title VII. *See* Lattanzio Affidavit, exhibit D.

### E. *Plaintiff's Contention that Missing Journal Creates a Factual Doubt*

Alternatively, Plaintiff contends that Defendant's inability to produce the accounts payable journal from January through April, 1989, creates factual doubt and that this Court should therefore deny summary judgment. *See* Plaintiff's Sur–Reply. We find this argument without merit. The missing documentation is a matter of form and not

substance: the Defendant submitted cancelled checks and payment invoices as a substitute for the missing journal. Defendant's Answers to Interrogatories, pp. 1–3.

The missing journal adds nothing to the Plaintiff's case. First, the information provided by the journal makes no impact on the discussion surrounding the five individuals at issue. Secondly, the questioned time period is only sixteen weeks. An employee who only worked during this time period would fall short of the required twenty weeks and, therefore, would not be considered an employee under Title VII.

### ORDER

AND NOW, this 17th day of June, 1993, following a careful review of all evidence in a light most favorable to the non-moving party and finding that the Security National Bank at no time had fifteen or more employees during the years 1989 and 1990 and, therefore, is not subject to Title VII, 42 U.S.C. §§ 2000e *et seq.*, it is hereby ORDERED that the Defendant's motion to dismiss the Plaintiff's complaint is GRANTED without prejudice to Plaintiff's right to raise her state law claims in the appropriate forum.