**LABORERS' PENSION TRUST FUND– DETROIT AND VICINITY, et al., trust fund established under, and administered pursuant to, federal law, Plaintiffs,**

v.

**PREFERRED TRENCHING, INC., a defunct Michigan corporation, and Dante Efrate, jointly and severally, Defendants.**

Civil Action No. 96–CV–75078.

United States District Court,
E.D. Michigan,
Southern Division.

July 8, 1997.

**456**

Sheldon M. Meizlish, Detroit, MI, for Plaintiffs.

Donald L. Samhat, Northville, MI, for Defendants.

### OPINION AND ORDER

FEIKENS, District Judge.

Plaintiffs Laborers' Pension Trust Fund, *et al*, (collectively, "Trust Fund") filed this suit to recover payments allegedly due from defendants under collective bargaining agreements (CBAs) entered between the Local Unions 334, 1076 and 1191 of the Laborers' International Union of North America and the Poured Concrete Wall Association, Inc. (PCWA), of which defendant Preferred Trenching ("Preferred") is a member. The fringe benefit provisions of the CBAs require the defendants to make contributions for fringe benefits for work performed by employees represented by the Laborers Union. These payments are to be paid into the Trust Fund, established under and administered pursuant to the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* Federal court jurisdiction over the enforcement of these provisions is established by LMRA, 29 U.S.C. § 185, and ERISA, 29 U.S.C. § 1132(e).

After setting aside a default judgment against defendants, this court held a bench trial on May 30, 1997. Plaintiffs' complaint sought benefit payments for five employees and liquidated damages. Of these, defendants agreed to make payments for three, Messrs. Clement, O'Brian and Sist, although these employees worked less than 150 hours for defendants and defendants had argued that as "trial employees" they were not entitled to fringe benefits. This left in dispute benefits for only two employees, Paul Iafrate (the nephew of defendant Dante Efrate) and Ron Klobuchar. Defendants maintain that the two men were not eligible for benefits because both were subcontractors, which plaintiffs contest. The parties stipulated that if Iafrate were found to be an employee, $27,089.14 would be owing for him; and if Klobuchar were found to be an employee, $3,214.60 would be owing for him. They also stipulated that the individual defendant, Dante Efrate, would be personally liable for any indebtedness of Preferred, which is now defunct. Thus the only question for trial was whether each of the men was a subcontractor or an employee.

■ The distinction between an employee and subcontractor is governed by a multi-factor common law test, including (1) the skills required; (2) source of instrumentalities and tools; (3) location of work; (4) duration of the relationship between the parties; (5) whether the hiring party has the right to assign additional projects to the hired party; (6) the extent of the hired party's discretion over when and how long to work; (7) method of payment; (8) the hired party's role in hiring and paying assistants; (9) whether the work is part of the regular business of the hiring party; (10) whether the hiring party is in business; (11) the provision of employee benefits; and (12) the tax treatment of the hired party. *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 323–24, 112 S.Ct. 1344, 1348–49, 117 L.Ed.2d 581 (1992), citing *Community for Creative Non–Violence v. Reid*, 490 U.S. 730,

751–52, 109 S.Ct. 2166, 2178–79, 104 L.Ed.2d 811 (1989).

 I find that the evidence presented clearly indicates that defendants treated both Iafrate and Klobuchar as employees in important relevant aspects. Most significantly, defendants (through a payroll service) made standard payroll deductions for state and federal income taxes and FICA. Defendants argued that this was done for the convenience of Iafrate and Klobuchar, both of whom wanted to receive cash in the short term from payroll rather than be paid for the job as subcontractors (presumably at a later time). Regardless of the motivation for treating the two men as employees in this manner, once defendants decided to do so they assumed the obligations set forth in the CBA.

Other factors also support this finding. The method of payment was through the same payroll service used for Preferred's employees. The work was part of Preferred's regular business, and Preferred clearly was a business. Defendants provided the men with benefits, such as the health insurance policy purchased for Iafrate and vacation pay given to Klobuchar through extra wages and a payroll deduction. Money paid to both men was reported to the Internal Revenue Service as wages (though sums not reported as wages were also paid).

Klobuchar, who owned his own business, Sereno Construction, did in some ways act as a subcontractor. He had other employees, and furnished tools and materials for the site. In addition to his payroll payments from defendants, he testified that he received lump sums totalling $18,000 to $25,000, which included reimbursement for materials he purchased for the site. But the fact that he may have performed subcontractor functions in addition to employee functions does not diminish his role as an employee. The deliberate choice to pay him for at least some of his time on the payroll indicates defendants' intent to treat him as an employee for those hours, if not for the rest of his time.

Klobuchar, Iafrate and defendants clearly saw an advantage to treating the two men as employees. They cannot choose to exempt themselves from the accompanying obligations. Defendants argue that it would be unfair to force them to pay out for health insurance when they purchased a private policy for Iafrate, and neither Iafrate nor Klobuchar could draw retroactively on the union health insurance plan for the relevant period of time. They also maintain that because Iafrate is not now a union member or qualified for a union pension by years of service, he may never draw on the pension benefits deposited for him (though Klobuchar may). This argument ignores the purpose of a union benefit program, which is to provide benefits for all covered employees. To permit employers and employees to opt out of these benefits plans would severely compromise the integrity of these plans.

For the above reasons, I find that Iafrate and Klobuchar were both employed by defendants, and defendants must therefore pay to plaintiffs the amounts stipulated by the parties.

Plaintiffs may submit an order of judgment.