TRUSTEES OF THE RESILIENT FLOOR DECORATORS INSURANCE FUND, the Resilient Floor Decorators Pension Trust Fund–Detroit Area, the Resilient Floor Decorators Vacation Fund, the Resilient Floor Decorators Apprenticeship Fund, and Interior Systems Local No. 1045 of the Michigan Regional Council of Carpenters, United Brotherhood of Carpenters and Joiners of America, Plaintiffs,

v.

A & M INSTALLATIONS, INC., a Michigan Corporation, Carpet Workroom, Inc., a Michigan Corporation, John Lukasik, an individual, and Darren Jahner, an individual, jointly and severally, Defendants.

No. 01–72332.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 17, 2003.

Nicholas R. Nahat, Lynn F. McGuire, Novara, Tesija, Southfield, MI, for plaintiffs.

Bruce M. Bagdady, Samuel J. Veltri, Kimberly A. Sordyl, Keller Thoma, Detroit, MI, for defendants.

## *OPINION AND ORDER*

ZATKOFF, Chief Judge.

### I. INTRODUCTION

This matter is before the Court on the following motions: 1) Plaintiffs' Motion for Summary Judgment; 2) Plaintiffs' Motion for Order Permitting Depositions and Adding Expert Witness; and 3) Defendants' Motion for Summary Judgment. All motions have been fully briefed. The Court finds that the parties have adequately set forth the relevant law and facts, and that oral argument would not aid in the disposition of the instant motions. *See* E.D. MICH. LR 7.1(e)(2). Accordingly, the Court ORDERS that the motions be decided on the briefs submitted. For the reasons set forth below, 1) Plaintiffs' Motion for Summary Judgment is DENIED; 2) Plaintiffs' Motion for Order Permitting Depositions and Adding Expert Witness is DENIED; and 3) Defendants' Motion for Summary Judgment is GRANTED.

### II. BACKGROUND

Plaintiffs are trustees to a series of multiemployer fringe benefit funds for union workers in the floorcovering industry. Plaintiffs allege that they entered into a collective bargaining agreement (hereinafter "CBA") with Defendant A & M Installations, Inc. (hereinafter "A & M"), under which A & M is obligated to make timely employee fringe benefit contributions to Plaintiffs' trust funds for each of A & M's employees that are covered by the CBA. Plaintiffs performed an audit of A & M, and determined that A & M was not delinquent on its fringe benefit contributions. Plaintiffs also allege, however, that A & M and Defendant Carpet Workroom, Inc. (hereinafter "Carpet Workroom"), are alter egos of one another. Consequently, the CBA that A & M signed may be applied to Carpet Workroom as well, thus making all labor performed by Carpet Workroom's employees subject to the terms of the CBA. In response, Defendants state that A & M and Carpet Workroom are totally unrelated entities that perform different functions.

Carpet Workroom was created by John Lukasik 1982, and was incorporated in 1989. It is not disputed that Carpet Workroom is in the business of selling carpet to commercial customers. In 1986, Darren Janher was hired as an employee of Carpet Workroom; he primarily worked in Carpet Workroom's warehouse. In early 1997, while he was still an employee of Carpet Workroom, Jahner formed A & M; Jahner remained an employee of Carpet Workroom until 2001, when he resigned to devote his full attention to A & M.

All other relevant facts are in dispute. Plaintiffs assert that Carpet Workroom and A & M are the same company. To support this assertion, Plaintiffs argue that not only does Carpet Workroom sell carpet, but its employees also provide the labor and install the carpet that its customers purchase. Plaintiffs point out that Carpet Workroom has never signed a collective bargaining agreement, and that its employees are not union members. Because Carpet Workroom is not unionized, it is foreclosed from bidding on projects, such as General Motors' projects, that only use union labor.

Plaintiffs allege that in 1996, Carpet Workroom's owner, Lukasik, realized that his company was unable to bid on projects that required union labor, and thus began exploring the possibility of becoming unionized. To that extent, Lukasik contacted and met with union representatives. Carpet Workroom, however, never signed a collective bargaining agreement. A few months after Lukasik's meeting with the union representatives, Carpet Workroom bid on a General Motors' project and was awarded the contract, however, Carpet Workroom's employees did not install the carpet; rather, employees from the then-newly formed A & M, a unionized installer, provided the labor. Thus, Plaintiffs allege that Carpet Workroom evaded the collective bargaining agreement by creating an alter-ego company that would be bound by the collective bargaining agreement.

Plaintiffs point to a number of facts to support its assertion. For example, they point to the fact that Jahner, the founder of A & M, was an employee of Carpet Workroom, and literally opened A & M's office in the same building as Carpet Workroom. Plaintiffs also allege that employees from Carpet Workroom perform tasks for A & M. For instance, A & M's telephone is occasionally answered by one of Carpet Workroom's employees, and that Carpet Workroom's bookkeeper, Elaine McDaniel, provides a number of services to A & M. Another allegation is that Carpet Workroom's owner, Lukasik, has occasionally been spotted at A & M's worksites, and occasionally performs errands for A & M, such as delivering paychecks to A & M's employees. In addition to these items mentioned above, Plaintiffs point to many other pieces of evidence to support their assertion that Carpet Workroom and A & M are in fact the same company.

In contrast, Defendants basically argue that Carpet Workroom's primary business is to sell carpet to commercial entities. When Carpet Workroom submits a bid for a job, its bids typically include the cost of installation, however, Carpet Workroom itself does not perform the installation. Instead, it hires subcontractors to independently install the carpet. Often, though not always, Carpet Workroom's bids contemplate the use of non-union independent contractors to provide the installation services. When bidding on a job that requires union labor, such as any projects for General Motors, Carpet Workroom's bid contemplates the use of a union subcontractor, such as A & M. In addition, Defendants argue that A & M only provides installation services, and, unlike Carpet Workroom, it does not actually sell carpet. Thus, the only relationship between Carpet Workroom and A & M is that of one

company that frequently subcontracts installation services to another company.

Further, Defendants argue that A & M was not created by Carpet Workroom for nefarious reasons. Rather, Defendants argue that Jahner decided to create A & M because he saw a need in the market for more unionized carpet installation subcontractors. When Jahner first decided to create A & M, he approached his primary contact in the floor covering industry, Lukasik, about the possibility of obtaining subcontracting work. Lukasik, the owner of Carpet Workroom, was willing to help out Jahner, and did indeed obtain a job for Jahner's fledgling company. For the first few years of A & M's existence, A & M was largely dependent upon Carpet Workroom for work, however, it had eventually started taking a larger percentage of its work from other sources.

Defendants also argue that many of the items that Plaintiffs point to in order to argue that Defendant are alter egos have alternative explanations. For instance, the reason Carpet Workroom's owner, Lukasik, periodically appears on A & M's worksites is either because Carpet Workroom has subcontracted work to A & M, or else because he is paying a social visit. For another example, Defendants concede that although Carpet Workroom's employees have occasionally performed simple services for A & M, those employees have done so without Lukasik's knowledge or consent, and have done so without being compensated by either A & M or Carpet Workroom.

Both Plaintiffs and Defendants have made motions for summary judgment, which the Court shall now consider.

## III. LEGAL STANDARD

Summary judgment is appropriate only if the answers to interrogatories, depositions, admissions, and pleadings combined with the affidavits in support show that no genuine issue as to any material fact remains and the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The non-moving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Philip Morris Companies*, 8 F.3d 335, 339–40 (6th Cir.1993).

## IV. ANALYSIS

Plaintiffs allege that Defendants A & M and Carpet Workroom are alter-egos of

one another, and that the CBA that A & M entered into with Plaintiffs can therefore be applied against Carpet Workroom as well. There are two legal issues for the Court to determine. First, does Carpet Workroom use its own employees to perform carpet installation, or does it use independent contractors? And second, are A & M and Carpet Workroom alter egos?

## 1. Independent Contractors

 Plaintiffs bring this action pursuant to the Employment Retirement Income Security Act of 1974 (hereinafter "ERISA"). *See* 29 U.S.C. § 1001 *et seq.* In particular, Plaintiffs note that, under ERISA, any employer that is required to make contributions to a multiemployer fringe benefit fund, such as the ones in issue in this action, must in fact make such contributions. *See* 29 U.S.C. § 1145. Further, the trustees of such multiemployer fringe benefit funds, such as Plaintiffs, have the right to seek the recovery of delinquent contributions. *See* 29 U.S.C. § 1129(g). Although ERISA establishes such rules, the protections of ERISA apply only to employees, and not independent contractors. *See* 29 U.S.C. § 1002(6); *see also Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992). Therefore, if Carpet Workroom's installers are independent contractors, then Carpet Workroom does not need to contribute to Plaintiffs' trust fund.

An unpublished decision from the Sixth Circuit bolsters this conclusion. In *Resilient Floor Decorators Vacation Fund v. Contract Carpet, Inc.,* No. 93–2594, 1995 WL 611148, *2 (6th Cir. Oct.17, 1995), the plaintiffs—who happen to be the same Plaintiffs currently before the Court—alleged that the defendant companies were alter egos of one another, and that the collective bargaining agreement signed by

the union defendant could be applied to the non-union defendant. *See id.* at *1. The non-union defendant, Imperial Floor, sold floor covering and installation services. *See id.* The district court found that Imperial Floor hired subcontractors, including the union defendant, to provide the installation services, and that Imperial Floor itself did not install the floor covering. *See id.* The Sixth Circuit affirmed, and stated: "[I]f the installers are not employees within the meaning of ERISA, 29 U.S.C. § 1002(6), Imperial cannot be liable for contributions." *See id.,* at *2. Further, the Sixth Circuit noted that the National Labor Relations Act excludes independent contractors from its definition of "employee." *See Resilient Floor Decorators,* 1995 WL 611148 at *2 (citing 29 U.S.C. § 152(3)). Thus, *Resilient Floor Decorators* reinforces this Court's conclusion.

In addition, the trust documents themselves support the Court's conclusion. The applicable trust documents, which are incorporated into the CBA, provide that the trusts are established for the benefit of the "employees" of the employer. For instance, the declaration of trust for The Resilient Floor Decorators Insurance Fund—one of the funds that bring this action—states: "The trust fund is created for the purpose of providing health, welfare, death or related benefits for employees, their families and beneficiaries." The declaration of trust for the Insurance Fund also states that it was revised with the provisions of ERISA in mind; therefore, the Court finds that the definition of "employee" that is found in the trust document is the same as ERISA's definition of "employee." The documents for the other trust funds at issue have similar language. Therefore, the trust funds are not empowered to collect contributions on behalf of independent contractors, because to do so would exceed the scope of the terms of the trust documents.

■ Not only do Plaintiffs lack the authority to collect contributions for the labor performed by independent contractors, but the law prohibits them from collecting funds that are not for the benefit of an employer's employees. Section 302 of the Labor Management Relations Act prohibits an employer from giving money to any type of labor organization. *See* 29 U.S.C. § 186(a). There are exceptions to this general rule; relevant here is the following: "money or other things of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents...." 29 U.S.C. § 186(c)(5). Thus, while an employer can contribute money to a fringe benefit trust fund, it may only do so on behalf of its employees and their families. Consequently, if Carpet Workroom's installers are independent contractors, and not employees, then Carpet Workroom would be prohibited from making contributions to the trust funds. The Court shall now analyze whether there is any genuine issue of material fact regarding the status of Carpet Workroom's installers.

■ The Court is to apply common law principles to determine whether an individual is either an employee or an independent contractor. *See Resilient Floor Decorators*, 1995 WL 611148 at *2 (citing *Darden*, 503 U.S. at 323, 112 S.Ct. 1344). The question of whether an individual is an employee or an independent contractor is a mixed question of law and fact, and the Court should consider the following factors:

the hiring party's right to control the manner and means by which the [work] is accomplished[;] ... the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants, whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*See id.* (quoting *Darden*, 503 U.S. at 323–324, 112 S.Ct. 1344 (quoting *Cmty. for Creative Non–Violence v. Reid*, 490 U.S. 730, 751–52, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989))).

Upon weighing the above listed factors, the Court finds that there is no genuine issue of material fact regarding whether Carpet Workroom's installers are employees or independent contractors—the Court finds that they are independent contractors. In support of their motion for summary judgment, Defendants point to the deposition testimony of Lukasik, the owner of Carpet Workroom. He basically stated that Carpet Workroom's business is to sell carpet and then contract the labor. He also stated that the contractors largely use their own tools, and that his company bids on both union and non-union jobs, which are all subsequently subcontracted to non-employee installers. In contrast, in a later section of his deposition, Lukasik states that Carpet Workroom has employees. Documents submitted indicates that Carpet Workroom reported the money it paid to its employees on W–2 forms, whereas it reported the amount it paid to its installers on 1099 forms.

Further deposition testimony is consistent with Lukasik's statement. For instance, David Rastigue states that his company, NBS Contract Group,[1] was awarded a contract to install floor covering for a

---

1. It is unclear from the documents submitted what kind of work NBS Contract Group does.

General Motors' project. Rastigue then attempted to hired a company to provide labor, and contracted the job to Carpet Workroom. Rastigue then testified that installers from A & M actually performed the job. William Kincaid, an employee at MPS[2], gave similar testimony; an installation job contracted to Carpet Workroom was performed by A & M. An installer employed by A & M, Timothy Fratrick, testified that Lukasik has appeared at A & M's job sites, however, he was there to correct defects in the carpet that his company supplied. Dave Cook and Scott Clor, both of whom do carpet installation for Carpet Workroom, both testified at their respective depositions that they submit bills and/or invoices to Carpet Workroom for their services. Cook mentioned that his checks are made to Dave Cook Floors, and that he is paid by the yard, and not by the hour. These statements, taken as a whole, are consistent with Lukasik's deposition testimony; Carpet Workroom subcontracts installation work to independent contractors, some of whom happen to be unionized.

Defendants' position is also supported by affidavits. Defendants submit the affidavits of eight men who performed installation work for Carpet Workroom. They all state that they work for a number of installers other than Carpet Workroom, that their income is not reported on W–2 forms, but rather, it is reported on 1099 forms, that their work is not supervised by Carpet Workroom, that they set their own schedule, that they are free to accept or decline work from Carpet Workroom, that they own their own tools, that they carry their own insurance, and that they do not receive any benefits from Carpet Work-

room. This corroborates the affidavit of Lukasik, who states that he does not supervise the work of Carpet Workroom's installers, and subcontracts installation jobs to subcontractors. Based upon these depositions and affidavits, the Court finds that Defendants made a clear prima facie case on the issue of whether the installers are independent contractors. The burden now shifts to Plaintiffs to demonstrate that there is a genuine issue of material fact regarding that same issue.

Plaintiffs are unable to create a genuine issue of material fact. The evidence that Plaintiffs point to in order to create an issue of fact is consistent with a finding that Carpet Workroom's installers are independent contractors. For instance, the fact that the installers are paid by the yard of material laid does not create an issue of fact. Further, neither does the fact that Carpet Workroom occasionally hires more than one independent contractor to complete a job, nor does the fact that Carpet Workroom retains some control over the time a job is completed, create an issue of fact; when Carpet Workroom wins a bid and then subcontracts the installation, it is very likely that Carpet Workroom itself is under a contractual obligation to ensure that a project is completed in a timely manner. Another fact Plaintiffs point to is that Carpet Workroom's installers do not "bid" for jobs; rather, according to the deposition testimony of Jennifer Musial—a secretary at Carpet Workroom—the names of the installers are written on a board at Carpet Workroom's office. To find out whether he is "employed" for the week, an installer must go to Carpet Workroom's office and see if his name is on the board; an installer does not get to

It appears, however, that it is in the floor covering industry, and has subcontracted work to Carpet Workroom.

2. As with NBS Contract Group, it is unclear from the documents submitted what kind of work MPS performs, other than to subcontract work to both Carpet Workroom and to A & M.

bid for, or choose, which project he wants to work on. But, again, this does not create an issue of fact, as such a method of hiring independent contractors would be efficient for Carpet Workroom; otherwise, Carpet Workroom would spend a great deal of time each week trying to contact installers in order to inquire whether they would like work on a given project.

In short, the Court finds that there is no genuine issue of material fact; there is not sufficient evidence to allow a finder of fact to find that Carpet Workroom's installers are employees. The Court finds that Carpet Workroom's installers are independent contractors, and therefore, Carpet Workroom, even if found to be an alter ego to A & M, cannot be required to make fringe benefit contributions. Therefore, Defendants' Motion for Summary Judgment is GRANTED.

Even assuming the Court found differently, and held that Carpet Workroom's installers are employees, the Court would still grant Defendants' motion because the Court does not find that A & M and Carpet Workroom are alter egos.

## 2. Alter Ego

Both parties move for summary judgment on the alter ego issue. The Court shall now decide whether there is any issue of material fact.

■■■ "The alter-ego doctrine was developed to prevent employers from evading obligations under [the National Labor Relations Act] merely by changing or altering their corporate form. The doctrine 'will be applied, when appropriate, to treat two nominally separate businesses as if they were a single continuous employer.'" *N.L.R.B. v. Allcoast Transfer, Inc.*, 780 F.2d 576, 579 (6th Cir.1986) (quoting *Alkire v. N.L.R.B.*, 716 F.2d 1014, 1018 (4th Cir.1983)). "'There are four factors which must be analyzed in determining whether two companies are joint employers: the

interrelation of operations between the companies, common management, centralized control of labor relations, and common ownership.'" *Int'l Longshoremen's Ass'n, AFL–CIO, Local Union No.1937 v. Norfolk S. Corp.*, 927 F.2d 900, 902 (6th Cir. 1991) (quoting *Metro. Detroit Bricklayers Dist. Council v. J.E. Hoetger & Co.*, 672 F.2d 580, 584 (6th Cir.1982)). It is reversible error if the Court does not limit its findings to these four factors. *See Local Union No.1937*, 927 F.2d at 902.

Because both Plaintiffs and Defendants make motions for summary judgment, both Plaintiffs and Defendants have to make a prima facie case. If both are able to, then there is a genuine issue of fact for trial. The Court finds that Defendant allege sufficient facts to create a prima facie case, however, the Court finds that Plaintiffs do not. Nor do Plaintiffs allege sufficient facts to avoid summary judgment.

The Court finds that Defendants make a prima facie case for why they are not alter egos of one another. Defendants argue that the two companies are distinct. Defendants allege that Carpet Workroom is primarily in the business of selling carpet, and contracts out installation services, whereas A & M only installs carpet. Defendants also point out that Carpet Workroom's stock is owned entirely by Lukasik, and that A & M's stock is owned entirely by Jahner. Further, Defendants state that the decision to create A & M was made entirely by Jahner; although Jahner asked Lukasik for some advice and some help, Lukasik had nothing to do with the creation of A & M.

Defendants concede that the companies do share some things, however, they assert that they are not jointly operated. For instance, Defendants concede that A & M leases office space from Lukasik, however, Defendants argue that A & M pays Lukasik a fair amount—roughly $600 per month—in rent on that office space. And,

although Defendants admit that A & M occasionally borrows tools from Carpet Workroom for some specialized jobs, Defendants assert that such a practice is not unusual for Carpet Workroom; Carpet Workroom loans its specialized tools to any of its installers whenever that installer needs a particular tool. Defendants also admit that Lukasik occasionally appears at A & M's worksites, but, they argue that the reason he appears is to either answer any questions about the carpet that his company supplied, or else to socialize. Further, while Lukasik has also delivered checks for A & M, he only did so because he was going to appear at an A & M worksite, and delivered the checks as a favor to A & M. Finally, while Jahner admits that A & M occasionally received help from Carpet Workroom's employees, Defendants present evidence that demonstrates that Lukasik was neither aware of the fact that his employees were assisting A & M, nor did he give his consent to such assistance, and that the assistance given to A & M was rather limited in time and in scope.

Based on this evidence, the Court finds that Defendants make a prima facie case that they are not alter egos of one another. The Court finds that Defendants have made a prima facie case that there is not an interrelation of operations, common management, centralized control of labor relations, and common ownership. *See Local Union No.1937*, 927 F.2d at 902.

Unlike Defendants, Plaintiffs do not allege sufficient facts to make a prima facie case that A & M and Carpet Workroom are alter egos. Plaintiffs point to a number of facts to support their assertion that A & M and Carpet Workroom are alter egos. To begin, as mentioned in the background section of the opinion, Plaintiffs state that Lukasik, the owner of Carpet Workroom, realized that his company was unable to work on projects that required union labor because his company never signed a collective bargaining agreement. To that end, Plaintiffs allege that in 1996, he met with Hank Zajac, a union representative, to discuss joining the union. A few months after that meeting, A & M was created by one of Lukasik's employees, Darren Jahner. From this, Plaintiffs argue that it may be inferred that the companies have the same ownership and management. Plaintiffs' argument, however, is nothing more than supposition; assuming that the meeting between Zajac and Lukasik occurred, it is not necessarily true that Lukasik had Jahner create A & M in order to evade the CBA.

■ All of the other facts that Plaintiffs point to are equally incapable of creating an issue of fact. For instance, Plaintiffs note that A & M was—and still is—operated out of the same office as Carpet Workroom. Plaintiffs allege that whenever Carpet Workroom wins a bid on a union project, such as a General Motors project, A & M performs the labor. In addition, Lukasik has been known to appear at A & M's worksites, has delivered checks to A & M's worksites, and has lent tools to A & M. Plaintiffs also point out that one of A & M's employees, Tim Fratrick, uses a cellular telephone provided by A & M; one of the pre-programmed numbers on that telephone is Lukasik's number.[3] None of

---

**3.** Among other pieces of evidence, Plaintiffs submit the report of a handwriting expert, Mr. Robert Kullman. Plaintiffs argue that Mr. Kullman will testify that the same individual, presumably an employee of Carpet Workroom, signed a number of checks on behalf of both A & M and Carpet Workroom. Plaintiffs, however, did not list Mr. Kullman as a potential expert witness when the parties were required to exchange witness lists on July 1, 2002. Although the Court can allow an amendment to a witness list, it will only do so for good cause shown.

these facts, nor any of the other facts Plaintiffs rely on, are inconsistent with finding that the two companies are not alter egos.

In general, Plaintiffs' evidence is, at best, merely circumstantial, and, at worst, proves very little, such as the fact that Lukasik married—and divorced—Jahner's sister well over a decade before A & M was created. There is insufficient evidence to support a finding that Defendants operations are interrelated, that there is common management, centralized control of labor relations, and common ownership. *See Local Union No.1937*, 927 F.2d at 902. Therefore, the Court finds that Plaintiffs are unable to make a prima facie case that Defendants are alter egos of one another. Defendants' Motion for Summary Judgment is GRANTED. Plaintiffs' Motion for Summary Judgment is DENIED.

## V. CONCLUSION

For the reasons set forth above: 1) Plaintiffs' Motion for Summary Judgment is DENIED; 2) Plaintiffs' Motion for Order Permitting Depositions and Adding Expert Witness is DENIED [4]; and 3) Defendants' Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

---

Plaintiffs do not show good cause. In their motion to add Mr. Kullman as an expert witness, Plaintiffs fail to inform the Court as to when Plaintiffs obtained copies of these checks. Nor can the Court ascertain such information from the file, or from any of the documents submitted. Although Plaintiffs state in their motion that they did not receive the last of their supplemental discovery responses until September 13, 2002, it is clear that Plaintiffs were aware of the fact that they needed a handwriting expert sometime before September 13, 2002; Plaintiffs submitted a revised expert witness list with Mr. Kullman's name on it on August 30, 2002. In short, Plaintiffs motion is too vague to be granted, and the Court will not consider Mr. Kullman's expert report.

4. Because this action shall be DISMISSED, the Court need not consider Plaintiffs' Motion for Order Permitting Depositions and Adding Expert Witness. Therefore, it is DENIED as moot.