Justice Stevens,
dissenting.
Congress has used the term “Indian” in the Indian Reorganization Act of 1934 to describe those individuals who are entitled to special protections and benefits under federal Indian law. The Act specifies that benefits shall be available to individuals who qualify as Indian either as a result of *402 blood quantum or as descendants of members of “any recognized Indian tribe now under Federal jurisdiction.” 25 U. S. C. § 479. In contesting the Secretary of the Interior’s acquisition of trust land for the Narragansett Tribe of Rhode Island, the parties have focused on the meaning of “now” in the Act’s definition of “Indian.” Yet to my mind, whether “now” means 1934 (as the Court holds) or the present time (as respondents would have it) sheds no light on the question whether the Secretary’s actions on behalf of the Narragansett were permitted under the statute. The plain text of the Act clearly authorizes the Secretary to take land into trust for Indian tribes as well as individual Indians, and it places no temporal limitation on the definition of “Indian tribe.”[1] Because the Narragansett Tribe is an Indian tribe within the meaning of the Act, I would affirm the judgment of the Court of Appeals.
I
This case involves a challenge to the Secretary of the Interior’s acquisition of a 31-acre parcel of land in Charlestown, Rhode Island, to be held in trust for the Narragansett Tribe.[2] *403 That Tribe has existed as a continuous political entity since the early 17th century. Although it was once one of the most powerful tribes in New England, a series of wars, epidemics, and difficult relations with the State of Rhode Island sharply reduced the Tribe’s ancestral landholdings.
Two blows, delivered centuries apart, exacted a particularly high toll on the Tribe. First, in 1675, King Philip’s War essentially destroyed the Tribe, forcing it to accept the Crown as sovereign and to submit to the guardianship of the Colony of Rhode Island. Then, in 1880, the State of Rhode Island passed a “detribalization” law that abolished tribal authority, ended the State’s guardianship of the Tribe, and attempted to sell all tribal lands. The Narragansett originally assented to detribalization and ceded all but two acres of its ancestral land. In return, the Tribe received $5,000. See Memorandum from Deputy Assistant Secretary-Indian Affairs (Operations) to Assistant Seeretary-Indian Affairs (Operations) 4 (July 29, 1982) (Recommendation for Acknowledgment).
Recognizing that its consent to detribalization was a mistake, the Tribe embarked on a century-long campaign to recoup its losses.[3] Obtaining federal recognition was critical to this effort. The Secretary officially recognized the Narragansett as an Indian tribe in 1983, Final Determination for Federal Acknowledgement of Narragansett Indian Tribe of Rhode Island, 48 Fed. Reg. 6177, and with that recognition the Tribe qualified for the bundle of federal benefits established in the Indian Reorganization Act of 1934 (IRA or *404 Act),[4] 25 U. S. C. § 461 et seq. The Tribe’s attempt to exercise one of those rights, the ability to petition the Secretary to take land into trust for the Tribe’s benefit, is now vigorously contested in this litigation.
II
The Secretary’s trust authority is located in 25 U. S. C. §465. That provision grants the Secretary power to take “in trust for [an] Indian tribe or individual Indian” “any interest in lands ... for the purpose of providing land for Indians.”[5]
[6]The Act’s language could not be clearer: To effectuate the Act’s broad mandate to revitalize tribal development and cultural self-determination, the Secretary can take land into trust for a tribe or he can take land into trust for an individual Indian.
Though Congress outlined the Secretary’s trust authority in §465, it specified which entities would be considered *405 “tribes” and which individuals would qualify as “Indian” in § 479. An individual Indian, § 479 tells us, “shall include all persons of Indian descent who are members of any recognized Indian tribe now under Federal jurisdiction” as well as “all other persons of one-half or more Indian blood.” A tribe, § 479 goes on to state, “shall be construed to refer to any Indian tribe, organized band, pueblo, or the Indians residing on one reservation.” Because federal recognition is generally required before a tribe can receive federal benefits, the Secretary has interpreted this definition of “tribe” to refer only to recognized tribes. See 25 CFR §83.2 (2008) (stating that recognition “is a prerequisite to the protection, services, and benefits of the Federal government available to Indian tribes by virtue of their status as tribes”); § 151.2 (defining “tribe” for the purposes of land acquisition to mean “any Indian tribe, band, nation, pueblo, community, ranchería, colony, or other group of Indians, . . . which is recognized by the Secretary as eligible for the special programs and services from the Bureau of Indian Affairs”).[6]
Having separate definitions for “Indian” and “tribe” is essential for the administration of IRA benefits. The statute reflects Congress’ intent to extend certain benefits to individual Indians, e. g., 25 U. S. C. § 471 (offering loans to Indian students for tuition at vocational and trade schools); §472 (granting hiring preferences to Indians seeking federal employment related to Indian affairs), while directing other benefits to tribes, e. g., §476 (allowing tribes to adopt consti *406 tutions and bylaws); §470 (giving loans to Indian-chartered corporations).
Section 465, by giving the Secretary discretion to steer benefits to tribes and individuals alike, is therefore unique. But establishing this broad benefit scheme was undoubtedly intentional: The original draft of the IRA presented to Congress directed the Secretary to take land into trust only for entities such as tribes. Compare H. R. 7902, 78d Cong., 2d Sess., 30 (1934) (“Title to any land acquired pursuant to the provisions of this section shall be taken in the name of the United States in trust for the Indian tribe or community for whom the land is acquired” (emphasis added)), with 25 U. S. C. § 465 (“Title to any lands or rights acquired pursuant to this Act . . . shall be taken in the name of the United States in trust for the Indian tribe or individual Indian for which the land is acquired” (emphasis added)).
The Secretary has long exercised his §465 trust authority in accordance with this design. In the years immediately following the adoption of the IRA, the Solicitor of the Department of the Interior repeatedly advised that the Secretary could take land into trust for federally recognized tribes and for individual Indians who qualified for federal benefits by lineage or blood quantum.
For example, in 1937, when evaluating whether the Secretary could purchase approximately 2,100 acres of land for the Mole Lake Chippewa Indians of Wisconsin, the Solicitor instructed that the purchase could not be “completed until it is determined whether the beneficiary of the trust title should be designated as a band or whether the title should be taken for the individual Indians in the vicinity of Mole Lake who are of one half or more Indian blood.” Memorandum from Solicitor to Commissioner of Indian Affairs 2758 (Feb. 8, 1937). Because the Mole Lake Chippewa was not yet recognized by the Federal Government as an Indian tribe, the Solicitor determined that the Secretary had two options: “Either the Department should provide recognition *407 of this group, or title to the purchased land should be taken on behalf of the individuals who are of one half or more Indian blood.” Id., at 2763.
The tribal trust and individual trust options were similarly outlined in other post-1934 opinion letters, including those dealing with the Shoshone Indians of Nevada, the St. Croix Chippewa Indians of Wisconsin, and the Nahma and Beaver Island Indians of Michigan. See 1 Dept. of Interior, Opinions of the Solicitor Relating to Indian Affairs, 1917-1974, pp. 706-707, 724-725, 747-748 (1979). Unless and until a tribe was formally recognized by the Federal Government and therefore eligible for trust land, the Secretary would take land into trust for individual Indians who met the blood quantum threshold.
Modern administrative practice has followed this well-trodden path. Absent a specific statute recognizing a tribe and authorizing a trust land acquisition,[7] the Secretary has exercised his trust authority — now governed by regulations promulgated in 1980 after notice-and-comment rulemaking, 25 CFR § 151 et seq.; 45 Fed. Reg. 62034 — to acquire land *408 for federally recognized Indian tribes like the Narragansett. The Grand Traverse Band of Ottowa and Chippewa Indians, although denied federal recognition in 1934 and 1943, see Dept. of Interior, Office of Federal Acknowledgement, Memorandum from Acting Deputy Commissioner to Assistant Secretary 4 (Oct. 3, 1979) (GTB-V001-D002), was the first Tribe the Secretary recognized under the 1980 regulations, see 45 Fed. Reg. 19322. Since then, the Secretary has used his trust authority to expand the Tribe’s land base. See, e. g., 49 Fed. Reg. 2025-2026 (1984) (setting aside a 12.5-acre parcel as reservation land for the Tribe’s exclusive use). The Tunica-Biloxi Tribe of Louisiana has similarly benefited from administrative recognition, 46 Fed. Reg. 38411 (1981), followed by tribal trust acquisition. And in 2006, the Secretary took land into trust for the Snoqualmie Tribe which, although unrecognized as an Indian tribe in the 1950’s, regained federal recognition in 1999. See 71 Fed. Reg. 5067 (taking land into trust for the Tribe); 62 Fed. Reg. 45864 (1997) (recognizing the Snoqualmie as an Indian tribe).
This brief history of § 465 places the case before us into proper context. Federal recognition, regardless of when it is conferred, is the necessary condition that triggers a tribe’s eligibility to receive trust land. No party has disputed that the Narragansett Tribe was properly recognized as an Indian tribe in 1983. See 48 Fed. Reg. 6177. Indeed, given that the Tribe has a documented history that stretches back to 1614 and has met the rigorous criteria for administrative recognition, Recommendation for Acknowledgment 1, 7-18, it would be difficult to sustain an objection to the Tribe’s status. With this in mind, and in light of the Secretary’s longstanding authority under the plain text of the IRA to acquire tribal trust land, it is perfectly clear that the Secretary’s land acquisition for the Narragansett was entirely proper.
*409 III
Despite the clear text of the IRA and historical pedigree of the Secretary’s actions on behalf of the Narragansett, the majority holds that one word (“now”) nestled in one clause in one of §479’s several definitions demonstrates that the Secretary acted outside his statutory authority in this case. The consequences of the majority’s reading are both curious and harsh: curious because it turns “now” into the most important word in the IRA, limiting not only some individuals’ eligibility for federal benefits but also a tribe’s; harsh because it would result in the unsupportable conclusion that, despite its 1983 administrative recognition, the Narragansett Tribe is not an Indian tribe under the IRA.
In the Court’s telling, when Congress granted the Secretary power to acquire trust land “for the purpose of providing land for Indians,” 25 U. S. C. §465 (emphasis added), it meant to permit land acquisitions for those persons whose tribal membership qualify them as “Indian” as defined by § 479. In other words, the argument runs, the Secretary can acquire trust land for “persons of Indian descent who are members of any recognized Indian tribe now under Federal jurisdiction.” §479. This strained construction, advanced by petitioners, explains the majority’s laserlike focus on the meaning of “now”: If the Narragansett Tribe was not recognized or under federal jurisdiction in 1934, the Tribe’s members do not belong to an Indian tribe “now under Federal jurisdiction” and would therefore not be “Indians” under § 465 by virtue of their tribal membership.
Petitioners’ argument works only if one reads “Indians” (in the phrase in § 465 “providing land for Indians”) to refer to individuals, not an Indian tribe. To petitioners, this reading is obvious; the alternative, they insist, would be “nonsensical.” Reply Brief for Petitioner State of Rhode Island 3. This they argue despite the clear evidence of Congress’ intent to provide the Secretary with the option of acquiring *410 either tribal trusts or individual trusts in service of “providing land for Indians.” And they ignore unambiguous evidence that Congress used “Indian tribe” and “Indians” interchangeably in other parts of the 'IRA. See § 475 (discussing “any claim or suit of any Indian tribe against the United States” in the first sentence and “any claim of such Indians against the United States” in the last sentence (emphasis added)).
In any event, this much must be admitted: Without the benefit of context, a reasonable person could conclude that “Indians” refers to multiple individuals who each qualify as “Indian” under the IRA. An equally reasonable person could also conclude that “Indians” is meant to refer to a collective, namely, an Indian tribe. Because “[t]he meaning— or ambiguity — of certain words or phrases may only become evident when placed in context,” FDA v. Brown & Williamson Tobacco Corp., 529 U. S. 120, 132 (2000), the proper course of action is to widen the interpretive lens and look to the rest of the statute for clarity. Doing so would lead to § 465’s last sentence, which specifies that the Secretary is to hold land in trust “for the Indian tribe or individual Indian for which the land is acquired.” Put simply, in §465 Congress used the term “Indians” to refer both to tribes and individuals.[8]
The majority nevertheless dismisses this reading of the statute. The Court notes that even if the Secretary has authority to take land into trust for a tribe, it must be an “Indian tribe,” with § 479’s definition of “Indian” determining a tribe’s eligibility. The statute’s definition of “tribe,” the majority goes on to state, itself makes reference to “Indian tribe.” Thus, the Court concludes, “[t]here simply is no legitimate way to circumvent the definition of ‘Indian’ in delin *411 eating the Secretary’s authority under . . . §479.” Ante, at 393.
The majority bypasses a straightforward explanation on its way to a circular one. Requiring that a tribe be an “Indian tribe” does not demand immediate reference to the definition of “Indian”; instead, it simply reflects the requirement that the tribe in question be formally recognized as an Indian tribe. As explained above, the Secretary has limited benefits under federal Indian law — including the acquisition of trust land — to recognized tribes. Recognition, then, is the central requirement for being considered an “Indian tribe” for purposes of the Act. If a tribe satisfies the stringent criteria established by the Secretary to qualify for federal recognition, including the requirement that the tribe prove that it “has existed as a community from historical times until the present,” 25 CFR § 83.7(b), it is a fortiori an “Indian tribe” as a matter of law.
The Narragansett Tribe is no different. In 1983, upon meeting the criteria for recognition, the Secretary gave notice that “the Narragansett Indian Tribe . . . exists as an Indian tribe.” 48 Fed. Reg. 6178 (emphasis added). How the Narragansett could be an Indian tribe in 1983 and yet not be an Indian tribe today is a proposition the majority cannot explain.
The majority’s retort, that because “tribe” refers to “Indian,” the definition of “Indian” must control which groups can be considered a “tribe,” is entirely circular. Yes, the word “tribe” is defined in part by reference to “Indian tribe.” But the word “Indian” is also defined in part by reference to “Indian tribe.” Relying on one definition to provide content to the other is thus “completely circular and explains nothing.” Nationwide Mut. Ins. Co. v. Darden, 503 U. S. 318, 323 (1992).
The Governor of Rhode Island, for his part, adopts this circular logic and offers two examples of why reading the statute any other way would be implausible. He first argues *412 that if §479’s definition of “Indian” does not determine a tribe’s eligibility, the Secretary would have authority to take land into trust “for the benefit of any group that he deems, at his whim and fancy, to be an ‘Indian tribe.’ ” Reply Brief for Petitioner Carcieri 7. The Governor caricatures the Secretary’s discretion. This Court has long made clear that Congress — and therefore the Secretary — lacks constitutional authority to “bring a community or body of people within [federal jurisdiction] by arbitrarily calling them an Indian tribe.” United States v. Sandoval, 231 U. S. 28, 46 (1913). The Governor’s next objection, that condoning the acquisition of trust land for the Narragansett Tribe would allow the Secretary to acquire land for an Indian tribe that lacks Indians, is equally unpersuasive. As a general matter, to obtain federal recognition, a tribe must demonstrate that its “membership consists of individuals who descend from a historical Indian tribe or from historical Indian tribes which combined and functioned as a single autonomous political entity.” 25 CFR § 83.7(e). If the Governor suspects that the Narragansett is not an Indian tribe because it may lack members who are blood quantum Indians, he should have challenged the Secretary’s decision to recognize the Tribe in 1983 when such an objection could have been properly received.[9]
*413 In sum, petitioners’ arguments — and the Court’s conclusion — are based on a misreading of the statute. “[N]ow,” the temporal limitation in the definition of “Indian,” only affects an individual’s ability to qualify for federal benefits under the IRA. If this case were about the Secretary’s decision to take land into trust for an individual who was incapable of proving her eligibility by lineage or blood quantum, I would have no trouble concluding that such an action was contrary to the IRA. But that is not the case before us. By taking land into trust for a validly recognized Indian Tribe, the Secretary acted well within his statutory authority.[10]
IV
The Court today adopts a cramped reading of a statute Congress intended to be “sweeping” in scope. Morton v. Mancari, 417 U. S. 535, 542 (1974). In so doing, the Court *414 ignores the “principle deeply rooted in [our] Indian jurisprudence” that “ ‘statutes are to be construed liberally in favor of the Indians.’ ” County of Yakima v. Confederated Tribes and Bands of Yakima Nation, 502 U. S. 251,269 (1992) (quoting Montana v. Blackfeet Tribe, 471 U. S. 759, 767-768 (1985)); see also Cohen §2.02[1], p. 119 (“The basic Indian law canons of construction require that treaties, agreements, statutes, and executive orders be liberally construed in favor of the Indians”).
Given that the IRA plainly authorizes the Secretary to take land into trust for an Indian tribe, and in light of the Narragansett’s status as such, the Court’s decision can be best understood as protecting one sovereign (the State) from encroachment from another (the Tribe). Yet in matters of Indian law, the political branches have been entrusted to mark the proper boundaries between tribal and state jurisdiction. See U. S. Const., Art. I, § 8, cl. 3; Cotton Petroleum Corp. v. New Mexico, 490 U. S. 163, 192 (1989); Worcester v. Georgia, 6 Pet. 515, 559 (1832). With the IRA, Congress drew the boundary in a manner that favors the Narragansett. I respectfully dissent.

 In 25 U. S. C. § 479, Congress defined both “Indian” and “tribe.” Section 479 states, in relevant part:
“The term ‘Indian’ as used in this Act shall include all persons of Indian descent who are members of any recognized Indian tribe now under Federal jurisdiction, and all persons who are descendants of such members who were, on June 1, 1934, residing within the present boundaries of any Indian reservation, and shall further include all other persons of one-half or more Indian blood.... The term ‘tribe’ wherever used in this Act shall be construed to refer to any Indian tribe, organized band, pueblo, or the Indians residing on one reservation.”
Notably the word “now,” which is used to define one of the categories of Indians, does not appear in the definition of “tribe.”

 In 1991, the Narragansett Tribe purchased the 31-acre parcel in fee simple from a private developer. In 1998, the Bureau of Indian Affairs notified the State of the Secretary’s decision to take the land into unreserved trust for the Tribe. The Tribe “acquired [the land] for the express purpose of building much needed low-income Indian Housing via a contract between the Narragansett Indian Wetuomuek Housing Authority *403 (NIWHA) and the Department of Housing and Urban Development (HUD).” App. 46a.

 Indeed, this litigation stems in part from the Tribe’s suit against (and subsequent settlement with) Rhode Island and private landowners on the ground that the 1880 sale violated the Indian Non-Intercourse Act of June 30, 1834, § 12, 4 Stat. 730, 25 U. S. C. § 177, which prohibited sales of tribal land without “treaty or convention entered into pursuant to the Constitution.”

 The IRA was the cornerstone of the Indian New Deal. “The intent and purpose of the [IRA] was ‘to rehabilitate the Indian’s economic life and to give him a chance to develop the initiative destroyed by a century of oppression and paternalism.’” Mescalero Apache Tribe v. Jones, 411 U. S. 145, 152 (1973) (quoting H. R. Rep. No. 1804, 73d Cong., 2d Sess., 6 (1934)). See generally F. Cohen, Handbook of Federal Indian Law § 1.05 (2005) (hereinafter Cohen); G. Taylor, The New Deal and American Indian Tribalism: The Administration of the Indian Reorganization Act, 1934-45 (1980).

 Section 465 reads more fully:
“The Secretary of the Interior is authorized, in his discretion, to acquire, through purchase, relinquishment, gift, exchange, or assignment, any interest in lands, water rights, or surface rights to lands, within or without existing reservations, including trust or otherwise restricted allotments whether the allottee be living or deceased, for the purpose of providing land for Indians.
“Title to any lands or rights acquired pursuant to this Act. .. shall be taken in the name of the United States in trust for the Indian tribe or individual Indian for which the land is acquired, and such lands or rights shall be exempt from State and local taxation.”

 The regulations that govern the tribal recognition process, 25 CFR § 83 et seq. (2008), were promulgated pursuant to the President’s general mandate established in the early 1830’s to manage “all Indian affairs and . . . all matters arising out of Indian relations,” 25 U. S. C. §2, and to “prescribe such regulations as he may think fit for carrying into effect the various provisions of any act relating to Indian affairs,” § 9. Thus, contrary to the argument pressed by the Governor of Rhode Island before this Court, see Reply Brief for Petitioner Carcieri 9, the requirement that a tribe be federally recognized before it is eligible for trust land does not stem from the IRA.

 Although Congress has passed specific statutes granting the Secretary-authority to take land into trust for certain tribes, it would be a mistake to conclude that the Secretary lacks residual authority to take land into trust under §5 of the IRA, 25 U. S. C. §465. Some of these statutes place explicit limits on the Secretary’s trust authority and can be properly read as establishing the outer limit of the Secretary’s trust authority with respect to the specified tribes. See, e. g., § 1724(d) (authorizing trust land for the Houlton Band of Maliseet Indians, the Passamaquoddy Tribe of Maine, and the Penobscot Tribe of Maine). Other statutes, while identifying certain parcels the Secretary will take into trust for a tribe, do not purport to diminish the Secretary’s residual authority under § 465. See, e. g., § 1775e(a) (Mohegan Tribe); § 1771d (Wampanoag Tribe); § 1747(a) (Miccosukee Tribe). Indeed, the Secretary has invoked his §465 authority to take additional land into trust for the Miccosukee Tribe despite the existence of a statute authorizing and directing him to acquire certain land for the Tribe. See Post-Argument En Banc Brief for National Congress of American Indians et al. as Amici Curiae 7 and App. 9 in No. 03-2647 (CA1).

 The majority continues to insist, quite incorrectly, that Congress meant the term “Indians” in §465 to have the same meaning as the term “Indian” in §479. That the text of the statute tells a different story appears to be an inconvenience the Court would rather ignore.

 The Department of the Interior found “a high degree of retention of [Narragansett] family lines” between 1880 and 1980, and remarked that “[t]he close intermarriage and the stability of composition, plus the geographic stability of the group, reflect the maintenance of a socially distinct community.” Recommendation for Acknowledgment 10. It also noted that the Narragansett “require applicants for full voting membership to trace their Narragansett Indian bloodlines back to the ‘Detribalization Rolls of 1880-84.’ ” Id., at 16. The record in this case does not tell us how many members of the Narragansett currently qualify as “Indian” by meeting the individual blood quantum requirement. Indeed, it is possible that a significant number of the Narragansett are blood quantum Indians. Accordingly, nothing the Court decides today prevents the Secretary from taking land into trust for those members of the Tribe who independently qualify as “Indian” under 25 U. S. C. §479.
Although the record does not demonstrate how many members of the Narragansett qualify as blood quantum Indians, Justice Breyer never *413 theless assumes that no member of the Tribe is a blood quantum Indian. Ante, at 399 (concurring opinion). This assumption is misguided for two reasons. To start, the record’s silence on this matter is to be expected; the parties have consistently focused on the Secretary’s authority to take land into trust for the Tribe, not for individual members of the Tribe. There is thus no legitimate basis for interpreting the lack of record evidence as affirmative proof that none of the Tribe’s members are “Indian.” Second, neither the statute nor the relevant regulations mandate that a tribe have a threshold amount of blood quantum Indians as members in order to receive trust land. Justice Breyer’s unwarranted assumption about the Narragansett’s membership, even if true, would therefore also be irrelevant to whether the Secretary’s actions were proper.

 Petitioners advance the additional argument that the Secretary lacks authority to take land into trust for the Narragansett because the Rhode Island Indian Claims Settlement Act, 92 Stat. 813,25 U. S. C. § 1701 et seq., implicitly repealed the Secretary’s §465 trust authority as applied to lands in Rhode Island. This claim plainly fails. While the Tribe agreed to subject the 1,800 acres it obtained in the Settlement Act to the State’s civil and criminal laws, § 1708(a), the 31-acre parcel of land at issue here was not part of the settlement lands. And, critically, nothing in the text of the Settlement Act suggests that Congress intended to prevent the Secretary from acquiring additional parcels of land in Rhode Island that would be exempt from the State’s jurisdiction.