NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-1765
_____

RUBY URGENT,
                              Appellant

v.

UNITED STATES MARSHALS SERVICE
_____

On Appeal from the District Court of the Virgin Islands
(D.C. No. 1-13-cv-00091)
District Judge:  Honorable Harvey Bartle, III

Argued May 10, 2017

BEFORE:  AMBRO, COWEN, and NYGAARD, *Circuit Judges*

(Opinion Filed: August 11, 2017)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Vincent A. Colianni, II, Esq. [Argued]
Vincent A. Colianni, Esq.
Colianni & Colianni
1138 King Street
Christiansted, VI 00820
    Attorneys for Appellant

Marleigh D. Dover, Esq.
United States Department of Justice
Civil Division
Room 7210
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Dana Kaersvang, Esq. [Argued]
United States Department of Justice
Room 7209
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Douglas N. Letter, Esq.
United States Department of Justice
Civil Division
Room 7513
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Sonia McNeil, Esq.
United States Department of Justice
Civil Division
Room 7234
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Angela P. Tyson-Floyd, Esq.
Office of United States Attorney
1108 King Street
Suite 201
Christiansted, VI 00820
    Attorneys for Appellee

NYGAARD, *Circuit Judge.*

Ruby Urgent, an applicant for a Court Security Officer (CSO) position, sued the United States Marshals Service alleging that it violated Title VII. She contends her application was rejected by the Marshals in retaliation for a discrimination claim Urgent's friend filed five years prior. Because we conclude that Urgent was not an applicant for employment in the federal government, we will affirm the order of the District Court granting summary judgment in favor of the Marshals.[1]

MVM, Inc., a private contractor, supplied CSOs to work in federal courthouses. Urgent submitted her application to MVM for a CSO position in 2011. MVM interviewed Urgent, evaluated her references, and determined she met the minimum requirements for the position. MVM then gave her application to the Marshals so they could conduct a background investigation. Deputy Marshal Darby Kirby was assigned this task in August 2011.

Urgent told the Marshals that she lived alone. But the investigation revealed that Diedre Finch[2] and Finch's son lived with Urgent. Finch was a former Lead Court Security Officer (LCSO) who was fired by MVM five years prior. Kirby included all of this information in the "Special Factors" section of her investigation report.

---

[1] We have jurisdiction under 28 U.S.C. § 1291. We give plenary review to a district court's order granting summary judgment, and we apply the same standard that the district court applied. *Carvalho-Grevious v. Delaware State University,* 851 F.3d 249, 256 (3d Cir,. 2017).

[2] She was formerly known as Diedre Valmont.

The deadline for completing the investigation was October 14, 2011. On October 5, 2011, Kirby told Urgent she needed to sign an additional authorization so the Marshals could review an internal affairs file from the Virgin Islands Police Department, Urgent's former employer. Urgent complied with this request on October 11 but the Police Department did not transmit the file in time to meet the October 14 deadline. On October 14, Kirby submitted Urgent's background investigation report, though incomplete, to the Marshals' Judicial Security Inspector, Daniel Winfield.

Winfield mistakenly believed that Urgent had been uncooperative about supplying authorizations and errantly concluded that she caused the incomplete investigation. He recommended to his supervisor, Reggie Bradshaw, that the deadline for completing Urgent's report should not be extended. This foreclosed Kirby's attempt to supplement the report two weeks later, after she received the internal affairs file. On November 15, 2011, LCSO Gregory Evans notified Urgent that she did not pass the background investigation and was disqualified for the CSO position. A former CSO subsequently told her that she was not hired because she lied on her application about living alone. Urgent maintains she did not lie and that it was a misunderstanding.

Urgent filed an Equal Employment Opportunity complaint with the Department of Justice alleging age and sexual discrimination. Urgent also checked a box on the EEO complaint indicating she was asserting a reprisal claim. She then retracted it explaining she did not understand the meaning of "reprisal." But later Urgent asserted to an EEO investigator that the Marshals intentionally failed her on her background investigation to

4

retaliate against Finch who, Urgent said, had filed a sexual discrimination lawsuit against MVM five years prior.

The Agency concluded in a final decision on May 21, 2013, that the evidence did not support Urgent's allegations of age and sexual discrimination. The Agency noted her remarks about Finch and Finch's lawsuit. But it also commented in its analysis that even if she was right—that the Marshals refused to hire her because of her friendship with Finch—she did not proffer enough evidence to show their relationship fell within a protected category.

Urgent filed this case with the District Court, pursuant to 42 U.S.C. § 2000e-16,[3] focusing only on her claim that the Marshals retaliated against her.[4] She maintained that she was forced to "pass through the gauntlet" of the Marshals' background check, giving them control over the hiring and firing of CSOs. She contended that this control was dispositive evidence that she was an applicant for federal employment. The District Court acknowledged the unique circumstance here: a federal agency conducting background checks on behalf of a private employer. But it reasoned that, even assuming the Marshals did control aspects of the hiring process, the rest of the record—including Urgent's own admissions about MVM being her employer—showed she was an applicant

---

[3] "All personnel actions affecting employees or applicants for employment . . . in executive agencies . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16.

[4] The Marshals assert that Urgent did not exhaust her retaliation claim because she retracted her EEO reprisal claim. However, the Agency comments in its final decision on Urgent's references to Finch, and its inclusion of this information in its analysis indicates it was, at a minimum, aware of the gist of her retaliation claim. Therefore, we do not regard this claim as waived.

to be an employee of MVM, not the Marshals.[5]  The District Court decided section

2000e-16 did not authorize this lawsuit.

Urgent now appeals the District Court's grant of summary judgment in favor of

the Marshals.  She reiterates the arguments she made before the District Court and says it

erred by restricting section 2000e-16 to only those who "literally" applied to a federal

agency.  We disagree with Urgent's characterization of the District Court's decision.

But, even if we assume—solely for purposes of summary judgment—that the background

check gives the Marshals complete control of the decision to hire or reject CSO

applicants, we still cannot find any reason to disturb the judgment of the District Court.

Urgent premises her claim on the fact that she was only an applicant.  Because of

this, she argues, the Title VII employer analysis should be collapsed to look only at who

has the power to hire and fire CSOs.  We are not persuaded.  *See Nationwide Mut. Ins.*

*Co. v. Darden,* 503 U.S. 318 (1992); *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 214

(3d Cir. 2015).  In Title VII claims, we look to the factors set out in *Darden*, which

generally focus on "'the level of control the defendant[s] . . . exerted over the plaintiff.'"

*Covington v. International Association of Approved Basketball Officials*, 710 F.3d 114,

119 (3d Cir. 2013).  This includes an inquiry into "'which entity paid [the employees']

salaries, hired and fired them, and had control over their daily employment activities.'"

---

[5]The District Court highlighted Urgent's concession that she submitted her application to MVM.  The District Court also pointed out that Urgent signed a document as part of her application acknowledging that MVM would hire her "to work on their behalf" and that she could not "at any time represent [herself] as an employee of [the Marshals]."

*Faush*, 808 F.3d at 214 (quoting *Covington*, 710 F.3d at 119). No one factor in the *Darden* analysis is decisive. *Darden*, 503 U.S. at 324.

Here the Marshals established that they do not pay the CSOs and that a site supervisor employed by the private contractor performs daily supervision of the CSOs at the courthouse. Urgent conceded in her complaint, in her briefing, and at oral argument that MVM pays, trains, and provides daily supervision of the CSOs.[6] Therefore, the undisputed evidence shows that two of three central factors in the *Darden* analysis do not support a conclusion that the Marshals could be considered an employer. On this record, we are convinced that MVM, not the Marshals, is Urgent's sole employer for purposes of Title VII.[7]

Because we conclude that Urgent was an applicant to be an employee of a private contractor, rather than an employee of the federal government, we must rule that section 2000e-16 does not authorize Urgent to bring this lawsuit. Accordingly, we will not reach the merits of her discrimination claim.

For all of these reasons, we will affirm the order of the District Court.

---

[6] In her reply brief, Urgent notes that the Marshals established employment standards for CSOs, monitors these standards, and can fire CSOs if they do not meet those standards. Even if we accept, for purposes of summary judgment, that this is a proper characterization of the Marshals' efforts and authority, this evidence is still insufficient to ground a reasonable inference that the Marshals exercised daily or routine supervision over the CSOs.

[7] With this record, our assessment would not change even if we agreed with Urgent that a joint-employer analysis is appropriate here. *See Wilson v. MVM, Inc.,* 475 F.3d 166, 173 (3d Cir. 2007).

7