# United States Court of Appeals for the Fifth Circuit

———————

No. 25-60182
Summary Calendar

———————

United States Court of Appeals
Fifth Circuit

**FILED**
October 7, 2025

Lyle W. Cayce
Clerk

PRIME INTERNATIONAL SHIPPING, L.L.C.,

*Petitioner*,

*versus*

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION;
LORI CHAVEZ-DEREMER, *Secretary, U.S. Department of Labor*,

*Respondents*.

———————————————

Petition for Review from an Order of the
Occupational Safety & Health Review Commission
Agency No. 23-0152

———————————————

Before DAVIS, JONES, and HO, *Circuit Judges*.

PER CURIAM:[*]

Petitioner Prime International Shipping, L.L.C. challenges a citation and penalty imposed for violations of the Occupational Safety and Health Administration's regulations. OSHA dispatched an investigator to Prime's Houston, Texas facility following reports that a fatality occurred there. Following that investigation, OSHA issued a citation to Prime for regulatory

———————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 25-60182

violations. Prime contested the citation at a hearing before an ALJ. The citation was sustained, and Prime sought discretionary review of that decision from the Commission. When the Commission denied that request, the ALJ's decision became a final order of the agency. Prime now petitions for review of that action, and we DENY the petition for the reasons stated below.

Prime provides freight-forwarding services to facilitate the carriage of vehicles overseas. At Prime's workplace, vehicles are paired with and loaded into shipping containers. Prime hired a three-man load crew to perform that task.

The citation alleged four serious violations found by the inspector, two of which are relevant to this petition[1]: (1) a gap between a shipping container and the loading dock, which workers could fall through; and (2) a chopsaw with an exposed blade, uncovered by the tool's guard, which was held partially open with rope. The agency alleged that the gap posed a violation of 29 C.F.R. § 1910.28(b)(3)(i) and that the chopsaw constituted a violation of 29 C.F.R. § 1910.212(a)(3)(ii). Those regulations apply to conditions that imperil "employees"—not independent contractors.

Prime challenges the citation on the ground that the three-man load crew were independent contractors and that, therefore, the regulations did not apply to its workplace conditions.

---

[1] During the OSHA investigation, the agency inspector also observed two workers operating forklifts without wearing seatbelts. The inspector's subsequent interviews revealed that the three people who operated the forklifts did not receive proper operational training. This observation gave rise to a citation item charging Prime with a violation of 29 C.F.R. § 1910.178(l)(1)(i). Prime did not appeal the ALJ's determination pertaining to this violation, so we do not consider it. Nor do we consider the violation related to the fatality, as OSHA withdrew that citation item the onset of the ALJ hearing.

No. 25-60182

The ALJ carefully considered whether the workers were employees or independent contractors. The context-dependent standard governing that inquiry was articulated by the Supreme Court in *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 323–24 (1992), and is informed by this court's "economic realities" test set forth in *Parrish v. Premier Directional Drilling LP*, 917 F.3d 369, 379 (5th Cir. 2019).

In *Darden*, the Court emphasized that the critical factor in determining the nature of the relationship between a worker and a company is "hiring party's right to control the manner and means by which the product is accomplished."[2] And, under this court's "economic realities test," the question is framed as follows: "whether the alleged employees, as a matter of 'economic realities,' are 'economically dependent' on the business to which they supply their labor and services."[3] Those realities include (1) the extent of the relative investments of the worker and the alleged employer; (2) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (3) the skill and initiative required in performing the job; and (4) the permanency of the relationship. Like the *Darden* test, our court recognized that the degree of control exercised by the alleged employer is the critical question.

Applying the *Darden* standard, the ALJ considered the skill necessary for the workers to complete their task and the conditions imposed on them by Prime. The ALJ described the work performed as involving "loading multiple cars in the shipping containers using forklifts, wire cable cut to size with a chop saw, two by four blocks and drills/screw guns," and deduced that

---

[2] 503 U.S. at 323 (quoting *Cmty. for Creative Non–Violence v. Reid*, 490 U.S. 730, 751 (1989)).

[3] *Parrish*, 917 F.3d at 379.

No. 25-60182

such work did not require a level of specialization associated with independent-contractor status. He also concluded that the loading crew's exercise of judgment was "bounded literally, and figuratively by the restrictions imposed by [Prime]'s directions for loading and base construction." He thus determined that those restrictions limited the crew's discretion in deciding how vehicles of varying sizes would be placed into a box of fixed dimensions. The ALJ also found that the crew members estimated that they worked five-to-six days per week and that Prime provided all the tools, equipment, and materials required to perform the job.

As for this Court's "economic realities" test, the ALJ noted that the loading crew brings little more than their labor in terms of investment to the enterprise and that they worked exclusively for Prime. According to the ALJ, those facts militated in favor of inferring employee status for the crew.

Offering a competing account, Yaser Salem—Prime's "owner/operator"—testified at the hearing. Salem explained that he deducts from the individual loading crew members' paychecks for the use of the tools, equipment, and materials necessary for loading, which would suggest that the workers were independent contractors. However, Prime provided no corroborating evidence, such as payroll records, to support the veracity of Salem's assertion. So, the ALJ declined to credit this testimony.

Having considered the evidence presented by the parties and through its application of the *Darden* and "economic realities" tests, the ALJ determined that the workers were indeed Prime's employees.

After reviewing the record, we are satisfied that the ALJ's employee-status determination was supported by substantial evidence.[4] Likewise,

---

[4] *See, e.g.*, *TNT Crane & Rigging, Inc. v. Occupational Safety & Health Rev. Comm'n*, 74 F.4th 347, 353 (5th Cir. 2023) (providing standard of review).

No. 25-60182

substantial evidence supported the agency's finding that Prime's loading crew were exposed to hazardous work conditions.

For these reasons and those stated in the ALJ's thorough decision and order, Prime's petition for review is DENIED.