NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0711n.06

Case No. 13-4364

| UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT | FILED<br>Sep 09, 2014<br>DEBORAH S. HUNT, Clerk |

ABSOLUTE ROOFING & )
CONSTRUCTION, INC., )
)
    Petitioner, )   ON PETITION FOR REVIEW
)   FROM THE OCCUPATIONAL
v. )   SAFETY & HEALTH REVIEW
)   COMMISSION
SECRETARY OF LABOR, )
)
    Respondent. )
)

---

BEFORE: SILER and KETHLEDGE, Circuit Judges; WATSON, District Judge.[*]

**SILER**, Circuit Judge. Absolute Roofing & Construction, Inc. ("Absolute") seeks review of an Administrative Law Judge ("ALJ") decision affirming citations and penalties assessed by the Occupational Safety and Health Administration ("OSHA") following a jobsite interview of Michael Koran by two OSHA Compliance Officers ("COs"). We **DENY** the petition.

## BACKGROUND

In 2011, OSHA inspected an Absolute jobsite where Koran was performing repair work on a church without certain safety measures in place. Absolute is a roofing contracting company owned by Michael Kamis, and Koran is a skilled carpenter who does roofing work. The COs

---

[*] The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

asked Koran a series of questions to determine his employment relationship with Absolute. Based on Koran's answers, the COs determined that Koran was an employee of Absolute.

As a result of the inspection, OSHA issued Absolute multiple citations with a total proposed penalty of $21,120.[1] Absolute contested the citations and an ALJ held a hearing on the merits. The ALJ determined that Koran was not a credible witness because his "testimony differed in several important respects from the information [he] provided to the COs on the day of the inspection." It also found that the subcontract agreement between Koran and Absolute did not apply to Koran's work on the church. Then, giving credibility to the COs over Koran, the ALJ applied the record to the factors outlined in *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323–24 (1992), and found that Koran was an employee of Absolute.

The ALJ also determined that neither Koran nor Koran's business, Koran Construction, Inc., was an indispensable party to the litigation. It found that, because Koran was Absolute's employee, the complaint correctly named Absolute as the only defendant. It likewise determined that Koran Construction, Inc. was not involved with Koran's work at the jobsite and was therefore not an indispensable party to the litigation.

## STANDARD OF REVIEW

We uphold the factual findings of the Occupational Safety and Health Review Commission (the "Commission") if they are supported by "substantial evidence on the record

---

[1] Citation 1, Item 1, alleged a serious violation of 29 C.F.R. § 1926.451(c)(2) for not ensuring that the scaffold at the jobsite rested on base plates. Citation 1, Item 2, alleged a serious violation of 29 C.F.R. § 1926.451(g)(1) for not ensuring that the employee using the scaffold was protected from falls by use of fall protection. Citation 2, Item 1, alleged a repeat-serious violation of 29 C.F.R. § 1926.451(a)(1) for not ensuring that the scaffold positioned below an employee on a steep-pitched roof was able to support the intended load that could have been applied to it. Citation 2, Item 2, alleged a repeat-serious violation of 29 C.F.R § 1926.501(b)(11) for not ensuring that the employee working on the roof was protected from a fall of approximately 13.3 feet by use of fall protection.

considered as a whole." *Empire-Detroit Steel Div., Detroit Steel Corp. v. Occupational Safety and Health Review Comm'n*, 579 F.2d 378, 383 (6th Cir. 1978) (quoting 29 U.S.C. § 660(a)). The Commission's legal conclusions may be overturned if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.* (quoting 5 U.S.C. § 706(2)(A)).

## DISCUSSION

### I.      ALJ's Employee Determination

#### A.  ALJ's Credibility Determination

Absolute argues that the ALJ erred in determining that Koran was an employee of Absolute and not an independent contractor. As a preliminary matter, Absolute contends that the ALJ's credibility determination was patently unreasonable in crediting the COs' testimony over Koran's. In *First Nat'l Monetary Corp. v. Weinberger*, we held that:

> [c]redibility determinations . . . are generally not to be set aside unless found to be inherently incredible or patently unreasonable. Appellate courts defer to the finder of fact[] because the factfinder has the opportunity to observe the witnesses' demeanors. However, a reviewing court does not act, even in credibility matters, as a mere rubber stamp for the administrative action on appeal. A reviewing court must consider evidence which fairly detracts from the weight of the credibility determination, and in a case where one witness's testimony is flatly contradicted by several others, the court must carefully examine the credibility finding.

819 F.2d 1334, 1339 (6th Cir. 1987) (internal quotation marks and citations omitted).

The ALJ properly assessed Koran as not credible by assessing his demeanor and by highlighting the portions of Koran's interview that contradicted his testimony at the hearing, and we will therefore defer to its adverse credibility determination. There were five key discrepancies between the statements Koran made during the investigation and during his testimony:

(1) Koran told the COs that he owned only the tools on his tool belt and that Absolute supplied all of the other equipment, but he later testified that he owned all of the tools on the jobsite.

(2) Koran told the COs that he had been at a different Absolute jobsite the morning before reporting to the church jobsite, but he testified that he had been at the church jobsite all day.

(3) Koran told the COs that he was required to report to Absolute's shop at 7:00 AM and work at least eight hours per day, but he testified that he set his own hours.

(4) Koran told the COs that Absolute set his wage and paid him hourly and that he did not have the opportunity to earn any profit on the church job. However, Koran testified that he submitted an invoice to Absolute for his work on the church job and that he charged an hourly rate plus overhead.

(5) Koran told the COs that he was an employee of Absolute, that Kamis was his employer, that he was not an independent contractor, and that Kamis controlled the church job. However, Koran testified that he subcontracted from Absolute to do the church job, that he controlled the site and was responsible for the completion of the church project, and that he was also responsible for not having fall protection at the site.

These discrepancies, coupled with the fact that "Koran's substantial and ongoing work relationship with [Absolute] appear[ed] to have influenced his testimony," led the ALJ to determine Koran's testimony was not credible. Further, because the COs' testimony relied on Koran's interview answers during the OSHA investigation, we reject Absolute's argument that Koran's testimony merely contradicts the testimony of the COs, as Koran's testimony actually contradicts his own prior statements during the investigation.

### B. The *Darden* Factors

Next, Absolute argues that the ALJ erred in finding that Koran was an employee of Absolute and not an independent contractor because it improperly applied the *Darden* test to the

facts of this case. In *Darden*, the Supreme Court adopted the common-law agency test for determining whether a worker is an employee or an independent contractor:

> [W]e consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

503 U.S. at 323–24 (internal quotation marks and citation omitted).

Absolute argues that it provided uncontroverted evidence for eight factors favoring independent contractor status. It relies on Koran's testimony at the hearing, but ignores Koran's statements from the investigation. Because the ALJ properly determined Koran's testimony to be not credible, we only give credit to the facts provided in the COs' testimony and in the handwritten notes from their interview of Koran during the inspection.

The "skill required" factor does not weigh in favor of a finding that Koran was an employee because he acquired his highly specialized skill outside of working for Absolute. *See Weary v. Cochran,* 377 F.3d 522, 526–27 (6th Cir. 2004). Koran was a skilled carpenter with over 30 years of experience prior to working for Absolute. Therefore, this factor weighs in favor of independent contractor status.

The government concedes that the factors of "the provision of employee benefits" and "the tax treatment of the hired party" suggest an independent contractor relationship between Koran and Absolute rather than an employer-employee relationship. Because Absolute gave no employee benefits to Koran and because Koran only received a Form 1099, a federal tax form for independent contractors, these factors weigh in favor of independent contractor status.

Nevertheless, the three factors that weigh in favor of independent contractor status must be balanced with the remaining ten factors, which weigh in favor of an employer-employee relationship between Absolute and Koran. *See Darden*, 503 U.S. at 324.

Absolute argues that "the source of the instrumentalities and tools" factor weighs in favor of Koran's independent contractor status, but relies solely on Koran's discredited testimony to support its position, stating that Koran testified to supplying all the tools used on the church jobsite. While the fact that a hired party works with all of his own tools would support a finding of independent contractor status, *see, e.g.*, *Trs. of Resilient Floor Decorators Ins. Fund v. A & M Installations, Inc.*, 395 F.3d 244, 250 (6th Cir. 2005), Koran told the COs that the ladder, scaffold, slide cutter, and other tools onsite were the property of Absolute. Therefore, this factor weighs in favor of a finding that Koran was an employee of Absolute.

In regard to "the duration of the relationship between the parties" factor, Absolute argues that, because the relationship between it and Koran lasted approximately four months, and because Koran performed work for Absolute only when called, this factor weighs in favor of independent contractor status. Evidence of an indefinite duration favors employee status rather than independent contractor status. *See FM Home Improvement*, 22 BNA OSHC 1531, at *8 (2009). Even though Koran only worked for about four months at the time of the investigation, he had worked on approximately twelve different projects for Absolute, and he continued to work for Absolute for almost one year after the inspection. Therefore, these facts favor a finding that Koran was an employee of Absolute.[2]

---

[2] The record is unclear as to whether Koran stopped working almost one year after the inspection or if he worked up to the date of the hearing and potentially thereafter. Regardless, the fact that Koran did not have a set period of employment reveals him to be Absolute's employee.

Moreover, the subcontract agreement did not indicate a definite employment relationship between Koran and Absolute. One of the COs testified that subcontractors normally sign a different subcontract agreement for each job. However, the subcontract agreement between Absolute and Koran makes no reference to the church job. The CO testified that this type of subcontract is indicative of a blanket subcontract that covers all work for an indefinite period of time, which, in his experience, is used to "skirt the system" and avoid the responsibilities of an employer-employee relationship. Therefore, the indefinite nature of the subcontract favors Koran's employee status. *See FM Home Improvement*, 22 BNA OSHC 1531, at *8.

Absolute argues that the "whether the hiring party has the right to assign additional projects to the hired party" factor also weighs in favor of a finding that Koran was an independent contractor because, even though it had the right to assign additional projects, Koran was under no obligation to accept these jobs. However, Absolute assigned tasks to Koran on a daily basis, Koran reported to Absolute at 7:00 each morning to receive his job assignments, and Absolute called Koran on the day of the inspection to send him to the church jobsite from a different Absolute jobsite. Koran also told the COs that Absolute had the right to assign him additional duties. Therefore, this factor favors a finding that Koran was an employee. *See Sharon & Walter Constr.*, 23 BNA OSHC 1286, at *3 (2010) (finding in part that a worker was an employee because the company required him to report back to headquarters for additional assignments if he finished his work before the end of his shift).

Next, Absolute argues that the "when and how long to work" factor weighs in favor of Koran's independent contractor status because Koran "determined the scope of the job, how long it would take to complete, and what was needed to complete the job." However, these facts stem from Koran's discredited testimony. Unlike an independent contractor who has complete

authority over when and how long to work, Koran's hours were controlled by Absolute, so this factor favors employee status. *Cf. Weary*, 377 F.3d at 527 (finding in part that, because the hired party controlled his hours and was "free to take vacation at his leisure and did not report his hours to anyone," the hired party was an independent contractor).

Lastly, Absolute contests "the method of payment" factor. Absolute contends that Koran "is not paid on a strict hourly basis, but instead was paid based on a formula he established that includes and [sic] hourly rate, overhead, and profit." But Koran told the COs that Absolute set his wage and paid him by the hour. A hired party is more likely an independent contractor when he is paid solely upon a commission basis and does not earn a salary. *See Weary*, 377 F.3d at 527. Koran's set hourly wage weighs in favor of employee status. *See Daniel Crowe Roof Repair and Its Successors*, 23 BNA OSHC 2011, *13 (No. 10-2090, 2011) (ALJ).

Absolute summarily asserts that "the location of the work" and the "hired party's role of hiring assistants" factors are not relevant to this case and therefore should not be analyzed. We disagree. Koran reported to work at Absolute jobsites every day, which favors a finding that he was an employee. *Cf. Weary,* 377 F.3d at 527 (finding in part that a hired party was an independent contractor because he worked from an office rented at his expense, not at the hiring party's offices). Also, Koran told the COs that he had no authority to hire or fire anyone, and he worked alone at the church jobsite, further revealing his employee status. *Cf. id.* (finding in part that a hired party who had the sole discretion in hiring assistants was an independent contractor).

Absolute concedes that the "whether the work is part of the regular business of the hiring party" and "whether the hiring party is in business" factors both weigh in favor of a finding that Koran was an employee of Absolute. Finally, each of the factors favoring employee status bolster the first factor, "the hiring party's right to control the manner and means by which the

product is accomplished." This factor is "a broad consideration that is embodied in many of the specific factors articulated in *Darden*." *Weary*, 377 F.3d at 525. Therefore, the ALJ properly assessed the *Darden* factors in determining that Koran was an employee of Absolute because ten of the thirteen factors weigh heavily in favor of an employee-employer relationship.[3]

## II.      Indispensable Parties

Absolute argues that the ALJ erred in not naming Koran, the individual, and Koran Construction, Inc. as indispensable parties to the litigation. It contends that Koran's testimony indicates he was solely responsible for not adequately securing the scaffolding and for not having fall protection and was therefore an indispensable party. It also argues that Koran Construction, Inc. performed work for Absolute during the time of the investigation and was therefore an indispensable party to the litigation.

Pursuant to Federal Rule of Civil Procedure 19(a)(1)(A), a person must be joined as a party to a proceeding if, "in that person's absence, the court cannot accord complete relief among existing parties." Koran was not an indispensable party to the litigation because he was an employee of Absolute. Koran told the COs during the inspection that he was an employee of Absolute. Koran testified that he signed the subcontract agreement and worked for Absolute as Koran, the individual, and not on behalf of Koran Construction, Inc. Likewise, Koran Construction, Inc. was not an indispensable party to the litigation because it was not involved in the Absolute jobsite. The Form 1099 that Absolute provided to Koran was issued to Koran the individual. Also, no bids or invoices by Koran Construction, Inc. were addressed to Absolute.

---

[3] Absolute urges us to use a twenty-factor list acknowledged by *Darden* and used by the Internal Revenue Service ("IRS") to determine Koran's employment status. *See Darden*, 503 U.S. at 324. We decline to make this inquiry because we find the *Darden* test to be comprehensive. Also, *Darden* does not suggest that we should supplement its common-law test with the IRS factors, *see id.*, and we will not expand the test without such a directive.

And though Koran's testimony was determined to be not credible by the ALJ, the one consistent part of his testimony was that Koran Construction, Inc. was not involved in the church jobsite.

### III.    Opportunity to Participate

Absolute argues for the first time on appeal that, because the COs failed to give Kamis the opportunity to participate in OSHA's inspection, its citations should be dismissed. "No objection that has not been urged before the Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 660(a). Absolute did not raise this issue in its post-hearing brief or in its petition for discretionary review to the Commission, and it has failed to argue that extraordinary circumstances prevented it from raising the issue. Therefore, we do not have jurisdiction over Absolute's argument that OSHA should have given it an opportunity to participate in the inspection. 29 U.S.C. § 660(a); *Nat'l Eng'g & Contracting Co. v. Herman*, 181 F.3d 715, 720 (6th Cir. 1999).

**REVIEW DENIED**.